LLOYD H. ZINSER ET AL., Appellants, v. ARTHUR LUCKS, JR., ET AL., Respondents, No. 41779—235 S. W. (2d) 844.

Special Division Three, January 15, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, February 8, 1951.

H. M. *Atwell* for appellants.

*Hugh Phillips* for respondents.

[844] McDOWELL, J.—This is an action in ejectment. The petition was filed in Camden County, Missouri, [845] July 22, 1949. Plaintiffs seek to recover possession of lands on which defendants maintain two billboards.

The answer seeks to enjoin plaintiffs from interfering with their possession claiming land by prescriptive easement.

The cause was tried October 18, 1949, and judgment rendered for defendants granting the injunction. Plaintiffs appeal to this court.

On motion Audrey H. Zinser was made party plaintiff and Arthur Lucks, Sr., and Phillomene Lucks parties defendant.

Plaintiffs' petition is an ordinary action in ejectment for the possession of lands occupied by the defendants by means of two large billboards established thereon.

The answer states that defendants were owners of a place of business and property located on the old Linn Creek Road in Camden County, Missouri, about three miles west of the intersection of that road with U. S. Highway No. 54 in said county; that, in order to reach defendants' place of business, use was made of that portion of the old Linn Creek Road, which runs in a westerly direction from said Highway 54; that the lands adjacent to the intersection of these roads belong to plaintiffs.

The answer states that the defendants went upon the land of plaintiffs at the intersection of the roads aforesaid, in the year 1933, and erected two permanent wooden advertising signs; one sign on the north side of the Old Linn Creek Road and west of U. S. Highway No. 54, which faced traffic traveling north on said Highway 54, the other sign was erected at the south side of the Passover road and east of said Highway No. 54, facing traffic traveling south on said Highway 54.

The answer then states that, for more than ten years last prior to the filing of plaintiffs' petition and since 1933, defendants have openly, notoriously, continuously, uninterruptedly, hostilely, exclusively, actually, peaceably, lawfully and adversely, erected, kept erected, maintained, repaired and gone on said lands for the purpose of keeping erected, maintained, repairing and keeping said signs free of obstructions to view, and have since said time, been in possession of said lands where the signs are situate and way of ingress to and egress from said signs for said purposes, and have used said lands as their own.

The answer then alleges that the signs are necessary for the proper and normal operation and enjoyment of their property; that, by the filing of plaintiffs' action, they threatened to remove said signs and, by the statements of plaintiffs, threatened to deprive defendants of their rights of operation of the same and the enjoyment thereof and defendants' right to use, repair and to remove obstructions barring view of such signs from the roadways. The answer pleads that defendants have no adequate remedy at law and pray that plaintiffs be enjoined from interfering with their rights in the operation of said signs.

We will refer to the appellants as plaintiffs and to the respondents as defendants in this opinion.

The facts in the case are practically undisputed. Plaintiffs, to sustain the issues in their behalf, offered warranty deeds showing title in them to 200 acres of land, a part of which is occupied by the sign boards in question. We gather from the evidence that this was woodland and unfenced, and that plaintiffs were residents of Chicago, Illinois.

The undisputed evidence, on the part of defendants, is that they were the joint owners of a business located about three miles west of

Missouri U. S. Highway No. 54, on the old Linn Creek Passover Road, known as "Art Lucks Resort", which is on the lake; that, to reach this property and place of business, use was made of that portion of the old Linn Creek road running from U. S. Highway No. 54 to the lake. The evidence is undisputed that defendants went upon the lands owned by plaintiffs, where U. S. Highway No. 54 intersects the old Linn Creek Passover road and erected two sign boards as described in defendants' answer; one sign board was on the north side of the old Linn Creek road and west of Highway No. 54, facing traffic traveling north on said highway; the other sign was on the south side of said Passover Road and east of U. S. Highway No. 54, facing traffic traveling south [846] on said highway; both signs were visible from Highway No. 54.

These signs were made of lumber and were more or less markers to direct the public to the defendants' place of business. They were self-supporting with braces on posts. The signs were first erected in 1932 and were about 10 x 14 feet. There was printed on these signs the name, "Art Lucks Resort", with a large arrow "On The Lake" to defendants' business and then printed thereon the words, "Cabins, Boats, Motors, Guides, Groceries and Ice".

Defendant, Arthur William Lucks, Jr., testified that he erected the sign boards on plaintiffs' land without knowing to whom the land belonged; that in 1932 or 1933, he placed the sign boards on plaintiffs' land in the same place where they now are; that, from time to time, he had the weeds and brush cut so that the signs could be seen from the road. He stated he had no permission to place the sign boards on the land and that he was more or less a trespasser. He stated he did not own the land nor claim title thereto; that he never deprived any other person from entering the area and putting up signs; that he never attempted to keep anybody off the land; anyone who wanted to put up a sign or clear out the timber could do so. He stated the signs were put up for defendants' special benefit in their business, to direct people to their camp. He gave this testimony:

"Q. Then you don't claim any ownership of that land at all? A. No, I don't.

"Q. And you have never asked anyone to get off of it, or stay off? A. No, I never have.

"Q. Anyone could come along and occupy it that wanted to? A. Yes, sir."

Defendants' testimony showed there was one other sign erected across the road with the words printed on it, "Three Rivers". This sign was advertising the Three Rivers Lodge, owned by Mr. and Mrs. Laaker. Defendants' evidence shows that these signs have been kept in the same place for about 15 years; that every four or five years, defendant would go upon the land and repaint the signs and

a time or two the storms have blown them down but that defendants, in a short time, would restore them.

Defendant stated that he went on there whenever the signs needed servicing, cut the brush so as to keep them in plain view.

At the end of the trial, the trial court made the statement:

"I am dismissing plaintiffs' petition. It is my opinion that the defendants have a right by prescription, to enter the land and maintain these signs, and of course, the right of egress."

Then, on the same day, to-wit, the 18th day of September, 1949, the following judgment was entered:

' "It is therefore hereby ORDERED, ADJUDGED and DECREED that the petition of the plaintiffs is hereby dismissed; that the plaintiffs are permanently enjoined from interfering with the right of ingress and egress to said signboards, described in the pleadings herein and in the evidence, by said defendants; that the plaintiffs are permanently enjoined from interfering with the clearing of any and all obstructions to the view of said signs to the respective roadways upon which they face."

We think we are justified, from the evidence, in finding that the lands owned by plaintiffs, who are residents of Chicago, Illinois, are unfenced woodlands, through which U. S. Highway No. 54 runs, and that, on plaintiffs' lands, said highway is intersected by the old Linn Passover road, which leads down to the Lake of the Ozarks, a distance of about three miles and to the location of the camp of the defendants; that at the time these sign boards were erected, by the defendants, there was no reason for objection, but now the owners of the land desire to develop a project in connection with the Lake of the Ozarks and, therefore, find that defendants' sign boards are obstructing the use of their lands.

There is no question but what the evidence shows that these sign boards have been used by the defendants for a period of more than ten years; that they are placed on separate supports and are guides to the [847] public traveling U. S. Highway No. 54, in advertising the location of defendants' camp or lots.

Plaintiffs' assignments of error present but one question for decision by this court, was there sufficient evidence to support the judgment of the trial court in finding that defendants were entitled to an easement by prescription on plaintiffs' land?

In determining the sufficiency of the evidence to support the judgment it is the duty of the court to try the case de novo and reach its own conclusions as to the facts and law giving due deference to the findings of the trial court. Hastings v. Hudson, 359 Mo. 912, 224 S. W. 2d 945.

The subject matter on appeal in this case is the establishment of an easement by prescription. An easement implies an interest in

land which places the jurisdiction in the Supreme Court. Wood v. Gregory, (Mo.) 155 S. W. 2d 168, 171.

In 28 C. J. S., p. 620, par. 1, an easement is defined as follows:

"An easement is property of the nature of land. It is an incorporeal hereditament, an interest in the land of the servient tenement, and may be a freehold or chattel interest according to its duration.

"While it is always distinct from the occupation and enjoyment of the land itself, and does not confer title to the land, or constitute a lien thereon, an easement is property, and partakes of the nature of land.

" * * * When acquired by prescription it may be qualified or conditional, according to the extent and mode of enjoyment during the prescriptive period, * * *.''

In Mahnken v. Gillispie, 329 Mo. 51, 43 S. W. 2d 797, the court states the law that an easement is a mere right of a person to use for a definite purpose another's land in connection with his own land; the use which it is claimed results in an easement must be of a class which is in its nature continuous and apparent and must be at least reasonably necessary to enjoyment and use of property claiming benefit.

In 28 C. J. S., p. 645, par. 10, the law is stated:

"The use and enjoyment which will give title by prescription to an easement or other incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. That is to say * * * it must be adverse, under a claim of right, * * * continuous and uninterrupted, * * * open and notorious, * * * with the knowledge and acquiescence of the owner of the servient tenement, * * * and must continue for the full prescriptive period, * * *. There must also be identity of the thing enjoyed.

"A prescriptive right is not looked on with favor by the law, and it is essential that all of the elements of use and enjoyment, stated above, concur in order to create an easement by prescription.''

In Schroer v. Brooks, (Mo. App.) 224 S. W. 53, 56, it was held that a prescriptive right may be established in the same way as title to land, that is, by adverse possession under claim of right, uninterrupted for ten years.

In Johnson v. Moore, 346 Mo. 854, 143 S. W. 2d 254, 256, the court states the rule that adverse possession must be hostile, under a claim of right, actual, open, notorious, exclusive and continuous.

In Riggs v. The City of Springfield, 344 Mo. 420, 126 S. W. 2d 1144, 1149, Judge Douglas, speaking for the court said:

"To obtain rights through prescription, it was necessary to observe strict requirements probably because, originally, title to an easement could not be acquired by adverse possession. In England

easements, as incorporeal hereditaments, were said to lie wholly in grant, and statutes of limitation were held to apply only to actions for the recovery of land. In time the fiction of a 'lost grant' was adopted by the courts that is, the courts presumed from the long possession and exercise of right by the claimant with the acquiescence of the owner, that there must have been, originally a grant by the owner to the claimant which had become lost. Then it was called a 'lost grant' not so much to indicate the [848] existence of the grant originally, but to avoid the rule of pleading requiring profert. * * * Under prescription an exclusive right of possession cannot be established but only a qualified right for a particular purpose. * * *'' Jacobs v. Brewster, 354 Mo. 729, 190 S. W. 2d 894.

In Jacobs v. Brewster, supra, the law is stated on page 896, as follows:

''* * * An easement, being 'an interest in land in the possession of another,' is necessarily 'capable of creation by conveyance'. 5 Restatement, Property, Sec. 450. And, it is true that many of the cases have said that 'An easement can only be created by grant' and that 'prescription, which presupposes a grant' is merely one of several ways of proving the grant. Kuhlman v. Stewart, 282 Mo. 108, 115, 221 S. W. 31, 33. But we have outgrown the use of the obvious fiction of a supposed grant when dealing with easements by prescription. Sanford v. Kern, 223 Mo. 616, 629, 122 S. W. 1051, 1055, 1056; 17 Am. Jur., Sec. 55. Prescription, when all the requirements of the doctrine are present, is now another well-recognized manner of creating or acquiring an easement. 5 Restatement, Property, Sec. 457; Faulkner v. Hook, 300 Mo. 135, 142, 254 S. W. 48, 52. And the decisive and determinative question in this case is whether the evidence demonstrates an easement by prescription; that is by 'adverse user as of right openly and uninterruptedly (continuously) for more than 10 years.' Sanford v. Kern, 223 Mo. loc. cit. 626, 122 S. W. loc. cit. 1055; * * *.''

We think that the law as to adverse possession is clearly stated in Horton v. Gentry, 357 Mo. 694, 210 S. W. 2d 72, 75:

''Our cases hold that possession sufficient to vest title after the lapse of the statutory period must be hostile and under claim of right, actual, open and notorious, exclusive, and continuous and uninterrupted. Hilgert v. Werner, 346 Mo. 1171, 1176, 145 S. W. 2d 359, 361; 2 C. J. S., Adverse Possession, par. 8. ' ''Whenever any of these elements is lacking, no title by adverse possession can ripen.'' ' Brown v. Chapman, Mo. Sup., 163 S. W. 2d 920, 922 (3). The burden of proof as to each element is on the person claiming title through adverse possession. State ex rel. Edie v. Shain, 348 Mo. 119, 122 (2-4), 152 S. W. 2d 174, 176 (4). Clear and positive proof is required. Crider v. Meatte, 320 Mo. 474, 485, 7 S. W. 2d 691, 694 (11-12); 2 C. J. S. Adverse Possession, par. 227.''

In 28 C. J. S., p. 663, par. 18, the law is stated.:

"* * * the user of a private right of way to ripen into an easement must be open and notorious, adverse under a claim of right, continuous and uninterrupted, with the knowledge and acquiescence of the owner of the soil, and for the full prescriptive period. The modern tendency, however, is to restrict the right of one to acquire a prescriptive right of way over the land of another, and each case must be determined largely on its own facts, and it has been held that the presumption of a grant from the user of a way may be rebutted, and may be overcome by facts and circumstances showing that it would be inequitable and unjust to enforce it." Riggs v. The City of Springfield, supra, 122 L. R. A. 1496.

The facts in the case at bar most favorably stated for defendants are that in 1932 defendants established a business on the Lake of the Ozarks on the old Linn Creek Passover Road, about three miles west of where that public road intersects Missouri U. S. Highway No. 54; that the ownership of the lands where these two highways intersect was, at the time of this suit, in plaintiffs, who had purchased it lately from others. Plaintiffs' lands were unfenced woodlands. In 1932 or 1933, at the latest, defendants went upon plaintiffs' lands, at the intersection of these highways and erected two billboards, one on each side of the highway. These billboards were advertising signs for defendants' business on the lake, directing travelers on U. S. Highway No. 54 as to the nature of defendants' business and the place of its location.

The testimony is that there was at least one other sign board put up at this intersection, on the opposite side of the road from defendants' sign board, and that there was no objection made by anyone as to this nature of the use of the land. In fact, defendants [849] state they did not know, at the time they erected these billboards, who the owners of the land were. Defendants also state they have continued the use of plaintiffs' lands since the time of the erection of said billboards by keeping them in repair. Defendants' evidence is that from time to time, during the 15 years use, defendants have gone on plaintiffs' lands at the place of said billboards, cut out the brush and weeds and every four or five years painted the billboards; that the sign boards were maintained as they now are practically, since their erection by the defendants; that, at times, they were blown down by storms but replaced by defendants in a short time to their usual and present condition.

The question is, will the erection of sign boards on unimproved woodlands in such a community, as this is shown to be, and used as above stated by defendants, constitute such user under claim of right as to impart knowledge on the part of the owners thereof that defendants were claiming a permanent interest in plaintiffs' land for the particular purpose of maintaining the sign boards thereon?

In 28 C. J. S., p. 647, par. 12, the law is stated:

"It is very generally stated that in order for a user to ripen into a prescriptive right it must not only be under a claim of right, * * * but must also be with the knowledge and acquiescence of the owner of the servient tenement, as such acquiescence is the foundation of the right by prescription, * * *. This statement, so far as it relates to the question of knowledge, implies either actual knowledge, or a user on the part of claimant of such a character that knowledge will be presumed, * * *."

Actual knowledge is not essential if the user be open, visible, and notorious and under claim of right.

We hold that the use in this case was not of such character as to indicate to the owners of the land that the lands claimed were used under a claim of right, and to put the owner on inquiry as to the character of the use so as to charge them with notice irrespective of whether they had actual notice or not. 28 C. J. S., p. 648, par. 12.

In 28 C. J. S., p. 672, 673, par. 18, the following law is stated:

"In the absence of such a statute, however, a right of way may be acquired by prescription over wild and uninclosed land, as well as over land under fence, if the circumstances make it evident that the way was used adversely under claim of right for the prescriptive period. Nevertheless, except in a few states, it is generally held, in determining whether or not the right to a passway has been acquired by prescription, there is a marked distinction between the character of evidence required to establish the right to a passway through inclosed land and that necessary to establish a passway through uninclosed land; while in the former case the consent of the owner may be implied from the fact that he permits the use of the passway, without objection, for the prescriptive period, the mere use of a right of way through uninclosed lands, especially woodland, will not give a right of way by prescription, the view being taken that such user is deemed permissive and raises no presumption that the use is under a claim of right which must be established in some manner other than by mere user. * * *."

In Burton v. Holland, 278 S. W. 252, being a case decided in the Court of Civil Appeals of Texas, the court held that the act of putting a sign board on the land of another and maintaining it by keeping up a fence around the lot and keeping the gate closed and cutting the grass and weeds in front of said sign boards continuously for the statutory period, was not sufficient to put an ordinary prudent person on notice as to the intentions of the claimant to exclude the real owners from the whole tract.

In this case the action was to recover an acre of land near the city limits of Beaumont. Plaintiffs relied upon the ten year statute of limitations and the trial court gave them judgment. This judgment was reversed by the Appellate Court because the evidence did not

show that character of adverse possession required under the evidence. The vacant lot claimed was three or four hundred feet from the city [850] limits, at intersection of Santa Fe Railroad and Rosedale public road, which was a much traveled thoroughfare. The evidence showed that the appellees entered upon the land and erected a large advertising sign board 50 feet wide by 10 feet high and, later, an addition 25 feet long by 10 feet high; that there was printed on the top the words, ''Holland Advertising Service''. This sign was used for the purpose of pasting advertisement of goods, wares and merchandise, etc. Appellees stated they did not know who the owner of the land was but that, at the time they erected the signs, they intended to occupy the land as their own and continuously used the same for twelve years. During the time of user they went on the lot one to three times a month to change the advertising on the board and occasionally cut grass and weeds in front of said board; that they repaired an old fence around the land and kept the gate shut. This sign board was substantially built and cost $150.00.

The owner of the land had moved away and there was an old house on the lot where the owner had cultivated a garden and there was an old fence out of repair on all sides of the lot claimed, except on the side of the railroad. The appellants had purchased the land from the owner shortly before the action was brought and took possession thereof.

Under this statement of facts the Texas court held that the user was not such as to constitute adverse possession. The facts in this case were much stronger than in the case at bar for in the Texas case the land was located in three or four hundred yards of the city limits of Beaumont, Texas, in a well-developed community. The sign boards were of such size as to indicate a trespass on the property thereby giving a cause of action to the owner. But in the case at bar, the lands of plaintiffs are undeveloped woodlands in the Ozark mountains. The owners of the land live in Chicago, Illinois. From defendants' testimony, it is clear that anyone who wanted to go upon these lands and erect signboards were privileged to do so without any thought of trespass or of reasonable belief that they intended to establish a permanent right or use in the lands of the servient tenement. The evidence shows that another business on the Lake of the Ozarks did erect such a sign board. Defendants' evidence shows they didn't know who the owner was when they erected these signs nor did they care, for it was evidenced from the surrounding conditions that there would be no objection on the part of the owners of this land to their action in so erecting these sign boards, advertising their place of business down on the Lake of the Ozarks.

We find that under the evidence defendants did not show such repeated acts of such character and at such intervals as to afford a

sufficient indication to the owners of the land in question that an easement was claimed.

In order to acquire an easement by adverse possession the user must be exercised under a claim of right and such claim must be known to and acquiesced in by the owner of the servient tenement.

The law is stated in 28 C. J. S., p. 654, par. 14:

"* * * it is not necessary that there be an express claim of right in words, or that the adverse party should expressly admit his knowledge thereof, for these facts may be inferred from the nature of the use, and the situation of the parties; nor is it necessary that the claim be valid or well founded, * * * as, the open, notorious, uninterrupted, adverse use of land under a claim of right for the statutory period may ripen into a title by prescription to an easement, although originally known to be a trespass."

This, we think, is the law and we hold that the nature of the use and the situation of the parties under the facts in this case was not such open, notorious, uninterrupted, and adverse use of the lands sought to be acquired as an easement to give notice to the owners thereof of such intentions on the part of the defendants.

Plaintiffs urged upon the court in their argument that defendants did not make a case for the reason that their evidence did not show that they claimed a right in these lands.

We have stated the law above as to what is meant by a claim of right. A claim of [851] right, on the part of defendants, does not mean they had to make an express claim in words, neither does it mean they should have a claim by deed or by color of title. Such claim may be inferred from the nature of the use and the situation of the parties. We think, under the evidence, that there were not such facts showing a character of user necessary to establish a claim of right under the law.

In 28 C. J. S., p. 658, par. 15, the law is stated:

"* * * In order to establish an independent prescriptive right in such a case, the individual user must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right."

For the reasons stated herein, we find that the user of the lands in question by the defendants was not of such a character as to ripen into an easement by adverse possession; that the trial court was in error in so finding.

The judgment is reversed and the cause remanded with directions to proceed in accordance with this opinion. All concur.