254 S.W.2d 30 (1952)
GEORGE et al.
v.
CROSNO.
No. 7095.
Springfield Court of Appeals, Missouri.
December 15, 1952.
*31 Joslyn & Joslyn and L. D. Joslyn, Charleston, for appellant.
Haw & Haw, Charleston, for respondent.
VANDEVENTER, Presiding Judge.
From a decree granting a permanent injunction restraining defendant from placing an obstruction across a road, he has appealed.
The case was tried on one count of an amended petition, which alleged that the plaintiffs were the owners of the N½ of the NE¼ and the E½ of the NW¼ of Section 3, Township 24, R 17, in Mississippi County, their home being located in the southeast corner of the SE¼ of the NW¼ of said section; that defendant was the owner of the N½ of SW¼ of said Section 3; that a roadway ran along the south side of defendant's land, entering the public highway on the west side; that this roadway had been there 40 years or more "and used constantly by the public during all that time." It was then alleged that plaintiffs have resided at the place designated since the 5th day of September, 1946, and that it is necessary for them to use the roadway on the south side of defendant's premises for access to the public highway on the west side thereof; that it is the only practical means of access to said highway "and the only possible means of ingress and egress from said highway to and from their home at this time.
The petition further stated that plaintiffs and their predecessors in title had the "open, notorious, continuous and uninterrupted use of said roadway under the claim of right and with the knowledge and acquiescence of defendant for more than ten years last before the date of the filing of this petition and have acquired a permanent easement and right to the uninterrupted use thereof."
It is then alleged that defendant, his servants, agents and employees constructed a gate across said roadway about March 21, 1950, locked the same and have obstructed the use of the road by plaintiffs and will continue to do so and thereby prevent plaintiffs *32 from travelling the same unless restrained from so doing. The prayer asked the court to issue a temporary injunction, the same to be made permanent upon final hearing. Damages were also asked in the sum of $500.
The amended answer admitted the ownership of the land as alleged in the petition but denied everything else.
At the time of the filing of the petition, a temporary injunction was issued. The cause was tried on the 9th day of November 1950, upon conclusion of which, the court took the matter under advisement.
On December 19, 1951, the court made the temporary injunction permanent and after a motion for new trial was overruled, defendant has appealed. The following plat shows the location of the pieces of land described in the evidence as well as the houses, roads, etc., material to the issues here:

*33 Plaintiffs' evidence showed that the road in question entered defendant's property from what is now State Highway No. 55, which runs north and south on the west side of defendant's land. It entered the premises through a gate at the road, thence into his horse lot, through another gate, circled north of his house, and between his house, barns and other buildings then back in a southeasterly direction to another gate, entering his field from the horse lot, thence to his turnrow on the south side of his place, proceeding due east to the southeast corner of his land where there was a fourth gate. The road may be located from "A" to "B" on the plat.
Plaintiffs' evidence also tended to show that for many years this road (which was defendant's turnrow) had been in this location, had had at least four gates across it, including one installed in 1935 (probably a replacement) at the extreme east and thereof where it left the defendant's premises (at "B" on plat) and that these gates had always remained closed, except when being used to permit passage through them. The gates on the east and west ends of the road were equipped with chains and locks attached to the gate or gate posts so the gates could be locked. One of plaintiffs' witnesses (Anderson Ferris or Verse) testified that for several years, from 1932 to 1946, the extreme east and west gates across this road (with the probable exception of the year 1945) were kept locked in the winter time, or during wet weather, at one time for three or four months. Plaintiffs' evidence further showed that since he had purchased the property in the neighborhood, he had used this road whenever he desired to go to State Highway 55 and to points on that highway, always opening and closing the gates in so doing. At one time when plaintiff, Clarence George, lived on the defendant's place, one A. L. Story, (a witness) in trying to go through, found the gate locked and Mr. George unlocked it for him.
Plaintiff, Clarence George, testified that twice he had found one of the gates locked and that at each time he had broken the chain or lock in order to open the gate so he could go through. The inference could be drawn from plaintiffs' testimony that this road was intermittently used by several people for several years before and after plaintiffs acquired their adjoining farm, but there is no evidence that at any time the gates were not there, or that they were ever left open.
Other witnesses testified that when they used this road, they did not ask permission of anyone, neither was any objection ever made to their using it, in fact, the evidence seems to show that the owner did not live on the premises but that he rented it to tenants who did.
The evidence on the part of defendant was that this turnrow was never thrown open to the public as a road, that it had never been graded as a road, although at one time, a ditch for drainage had been made between it and his south fence and that for convenience a culvert had been built across it by one of his tenants to aid in crossing a slough or drain. When his field was cultivated, the rows ran north and south and the turnrow was used to turn on so the corn would not be trampled. His evidence further showed that during the winter months and during wet weather, the gates were kept locked because he did not want anyone going through his land when the ground was wet and soft and that it was in that condition most of each winter because, adjoining his land on the south there was a woodland which shaded the turnrow and kept it from drying out.
The defendant testified as to the number of gates he had installed through his premises along his turnrow; that he had affixed to some of the gates chains and locks; that he had never given anyone the right to use this turnrow permanently as a road but he and his tenants had, at times, upon their request, permitted certain neighbors to do so. This was always with the understanding that they would open and close the gates to keep his stock in their enclosures as this land was used mostly as a stock farm. It seems that plaintiff, Clarence George, a short time before this litigation started, had asked him about using the road and that he told him he would permit him to do so if he would sign a statement *34 that the use was permissive and that it was not to be adversely used, so it could not ripen into an easement by prescription. This the plaintiff refused to do.
In making the temporary injunction permanent, the Chancellor does not state whether he thinks this was a public road, an easement by prescription, an implied dedication or a way of necessity. He merely makes the temporary injunction permanent. The temporary injunction required the defendant "to remove all obstructions interfering in any way with the use of the roadway in plaintiffs' petition described and mentioned and to refrain from in any wise interfering with the use of said roadway by plaintiffs" until a final hearing could be had.
It is clear that the court could not have found this to be a public road. There is no evidence that it had been used for ten years by the public prior to March 30, 1887. Laws of Mo. 1887, p. 257, Sec. 57. State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653. Jordan v. Parsons, 239 Mo. App. 766, 199 S.W.2d 881.
Neither could it have been a public road under the provisions of Section 228.190 RSMo 1949, V.A.M.S. Marshall v. Callahan, Mo.App., 229 S.W.2d 730. State v. Kitchen, 205 Mo.App. 31, 216 S.W. 981.
There was no evidence that it was opened by the county court or continuously used for ten years with the expenditure of public labor or monies upon it "for such period."
Neither is there any evidence of an implied dedication of an easement across defendant's land for such generally arises by virtue of the conveyance of a portion of a tract of land. 28 C.J.S. Easements, § 30, pp. 686, 687. 17 Am.Jur. Easements, Secs. 32 and 34.
The injunction cannot be justified upon the ground that the road in question is a way of necessity. The evidence shows that when plaintiff goes south one-fourth mile from his house to the east end of the road in controversy, instead of going west through the land of defendant, he can go east to the levee road and thence north and east to Crosno, Belmont, Columbus, Kentucky and other points and south to Wolf Island and Dorena. These are all places to which he desires access. In addition to that, the plat introduced in evidence shows a road south of his land connecting the levee road with Highway 55 and another one to the north connecting the same roads at what is known as "34 Corners". It might be more convenient for him to go to some of these places by crossing defendant's road but convenience alone will not justify a way of necessity. Schnider v. M. E. H. Realty Inv. Co., 239 Mo.App. 546, 193 S.W.2d 69.
If plaintiffs have the right to use this road and if the trial court was justified in making the injunction permanent, it must be upon the theory of an easement by prescription. Originally, this right, to be enforced must have existed "for a time whereof the memory of man runneth not to the contrary." Easements of this character were first sustained upon the fiction that there must have been a grant of the right and that it had been lost. It was reasoned that if a person or the public used a right of way for so long a time that no one could remember to the contrary, undoubtedly a grant of such right had been made or the owner of the servient tenement would not have permitted the use. However, this fictitious theory of the origin of the easement by presuming a lost grant has been outgrown and such right is now declared to be substantially the same in quality and characteristics as adverse possession, which will give title to land. Roberts v. Quisenberry, Mo., 242 S.W.2d 26. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844. Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894. Kuhlman v. Stewart, 282 Mo. 108, 221 S.W. 31. Schroer v. Brooks, 204 Mo.App. 567, 224 S.W. 53.
But use alone for a long number of years does not create the right. See Roberts v. Quisenberry, Supra. There must be knowledge, actual or constructive on the part of the owner of the servient tenement that the use was being made of his premises, and furthermore, that this use was adverse, and hostile, under claim of right and in defiance of his title, and of such a character *35 as would, if not interfered with, ripen into an irrevocable right. In addition, the claim of the right of easement must be actual, open, notorious, hostile, exclusive and continuous. Zinser v. Lucks, Supra. Kelsey v. City of Shrewsbury, 335 Mo. 79, 71 S.W.2d 730. Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010. Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193. Vaughan v. Rupple, 69 Mo.App. 583.
"The use must be continuous and uninterrupted for the full prescriptive period; and any substantial interruption thereof is fatal to the claim of prescription." 28 C.J.S. Easements, § 13, p. 648. Allen v. Wiseman, Supra. 17 Am.Jur. Easements Sec. 60, p. 972. It must be a peaceable and not contentious use.
"`In order to bar the true owner of land from recovering it from an occupant in adverse possession and claiming ownership through the statute of limitations, the adverse possession must have been, for the whole period prescribed by the statute, actual, open, visible, and notorious, continuous without a break, and hostile or adverse to the true owner's title and the world at large. * * * The element of unbroken continuity is essential and indispensable.' * * * `Whenever any of these elements is lacking, no title by adverse possession can ripen.'" Brown v. Chapman, Mo.Sup., 163 S.W.2d 920, 922.
The easement cannot arise by prescription if the owner of the servient estate has habitually broken and interrupted its use at will. It could hardly be said that he was acquiescent in a use which he was continually interrupting and protesting against.
After considering all the testimony in this rather voluminous record, we have come to the conclusion that there was a failure of proof on the part of plaintiff. While it is true that at times this road was traveled by plaintiffs and others, it is also true that the defendant maintained gates at the east and west ends of this road where it entered and left his premises. So far as the evidence shows, the gates were always in good shape so they could be opened and closed by anyone going through. The maintenance of the gates showed that the defendant did not acquiesce in the public character of the road and when he equipped them with chains and locks, it showed that he claimed the absolute and complete possession and control of the right of way. This was clearly apparent to anyone using the road, but in addition to that, all users that went through, opened and shut the gates, which was a tacit admission that their use of the turnrow as a road was permissive and in the nature of a license. But in addition to these facts, the defendant, or his tenant, actually locked the gates, practically each year since 1935, and at one time at least, the gates were locked and the roads were not used for three or four months.
When the plaintiff, Clarence George, lived upon the premises of defendant as a tenant, he was instructed to lock the east gate, did so, and one witness testified that when he wanted to use it, he got this plaintiff to unlock it.
We think the evidence wholly fails to show that the use of this road was under claim of right, adverse, hostile, exclusive and continuous. Its use was clearly permissive and in the nature of a license, was a neighborly act, Schulenbarger v. Johnstone, 64 Wash. 202, 116 P. 843, 35 L.R.A.,N.S., 941, without in any way acquiescing in the acquirement of a permanent right. Unless there was an easement by prescription, plaintiffs were not entitled to the injunction.
The permanent injunction should not have been granted and the decree of the trial court is reversed and the case is remanded with directions to the Chancellor to dismiss Count No. 1 of plaintiffs' bill for want of equity.
BLAIR, J., not participating.
McDOWELL, J., concurs.