**Eli COOK, Plaintiff-Respondent,**

v.

**Carl BOLIN and G. C. Norris, Defendants-Appellants.**

**No. 7548.**

Springfield Court of Appeals.

Missouri.

Nov. 20, 1956.

William E. Seay, Salem, for defendants-appellants.

Lay & Ichord, Houston, for plaintiff-respondent.

RUARK, Judge.

This is an appeal from a judgment enjoining the defendants from commission of certain trespasses. Plaintiff, now respondent, Cook, in his petition charged the defendants, now appellants, Bolin and one G. C. Norris (a tenant or employee of Bolin), with repeated trespass and breaking locks upon gates at each end of a logging trail across plaintiff's land, leaving such gates down and permitting the cattle there pastured to escape.

The applicable portion of defendants' answer is as follows:

"3. Further answering, defendants state that the road described in paragraph two of plaintiff's petition is a public way and an easement for the use of defendants and that said road has been used as a public way and easement by various individuals.

"4. That the said roadway has been used by the defendants and defendant Carl Bolin's predecessors in title and by such members of the traveling public as desired to travel the road since the memory of man runneth not to the contrary."

To such answer plaintiff made reply as follows:

"1. Denies each and every, all and singular, the allegations in defendants' Answer contained.

"2. Plaintiff further states that the road or logging trail described in paragraph two of Plaintiff's Petition never has been a public road or way.

"3. Plaintiff further states that he has exercised exclusive ownership

over said road or logging trail for the last 22 years and if the said road or logging trail ever was a public way, it is not now such due to abandonment by non-user of said road or logging trail by the public for the last 22 years under Section 228.190 Missouri Revised Statutes, amended in 1953 [V.A.M.S.]."

Appellants' first assignment is:

"Respondent failed to reply to appellents' affirmative defense of an easement appurtenant and the court should have given judgment for appellants on motion by defendants."

We think the assignment is ill-taken.

■ First, it will be noted that the reply contains a denial to "each and every, all and singular," the allegations of the answer. This was sufficient. Section 509.-080, RSMo 1949, V.A.M.S.; Brown v. Adams Transfer & Storage Co., Mo.App., 31 S.W.2d 117; Huth v. Picotte, Mo.App., 154 S.W.2d 382; Auchincloss v. Frank, 17 Mo.App. 41.

■ Second, we are doubtful if the answer pleaded an easement appurtenant, and we are certain that defendants did not try their case on that theory. The language "a public way and easement by various individuals" and that the roadway "had been used by the defendants and defendant Carl Bolin's predecessors in title and by such members of the traveling public" is ambiguous, and its creates the impression that the pleader is contending that "a *public* way" existed which was used and enjoyed by defendant's predecessors in title, along with others of the public. Although the pleader did not hesitate to expressly declare there was a public way, there is no express mention of a private way or an easement appurtenant. Such an easement involves both dominant and servient lands. There is no indication as to what dominant lands an appurtenant easement served. The office of the pleadings is to define and isolate the issues to

those controverted so as to advise the trial court and the opposite party of the issues to be tried, Dillard v. Thomas, 241 Mo. App. 773, 270 S.W.2d 548; Ritchie v. Burton, Mo.App., 292 S.W.2d 599, and the duty rests upon the pleader to express his meaning clearly. A pleading which is ambiguous or in which doubt or confusion appears should be construed most strongly against the pleader and in favor of the judgment. See Therrien v. Mercantile-Commerce Bank & Trust Co. (en banc), 360 Mo. 149, 227 S.W.2d 708; Koewing v. Greene County Building & Loan Ass'n, 327 Mo. 680, 38 S.W.2d 40.

■ A pertinent inquiry is, how did the pleader himself construe this pleading? An examination of the transcript shows that the case was tried throughout upon the theory that the road in question was a public road acquired by prescription. The words "easement appurtenant" or "private way," or similar or equal expressions, were never once used throughout the trial by counsel, court or witnesses. The questions asked of the witnesses, the objections and remarks of counsel and the remarks and rulings of the court appear to have been directed toward the sole question of whether a public way existed. The only motion made by defendants was an oral one made at the close of the plaintiff's case, which motion was to dismiss the petition and direct a verdict (sic) for defendants because "by every witness they had it was shown it was *traveled by the public* across this road." The first time we find mention of an easement appurtenant is in the defendants' motion for new trial. It is axiomatic that a party is bound by the theory upon which he tried his case. See cases West's Missouri Digest, Appeal and Error, ■

We are of the opinion that the theory of an easement appurtenant never occurred to the defendants until after they had tried their case. To believe otherwise would necessitate the conclusion that counsel deliberately dug a pit and carefully con-

cealed it with the leaves of legal verbiage hoping thereby to entrap the court. In modern legal practice pleadings are designed for the purpose of defining issues, not to serve as sources of ambush.

■ Appellants' assignment number II is:

· "When appellants' evidence proves user of easement for the statutory period the burden of proving permissive use or by license shifts to respondent."

With this abstract statement, as a generality and subject to some qualifications and limitations not necessary to discuss here, we agree. We have no doubt the circuit judge did also, for we find nowhere in the record any ruling to the contrary. Obviously the assignment does not point to any such contrary ruling. With what error, therefore, are we to convict the trial court? Supreme Court Rule 1.08, 42 V.A.M.S., provides, among other things, that the points relied upon shall briefly and concisely state *what actions or rulings of the court are claimed to be erroneous.* The appellate courts repeatedly point out that abstract statements of the law are valueless as assignments of error. An assignment must point out that which the court did or did not do which it is contended was erroneous. Berghorn v. Reorganized School Dist. No. 8 (per curiam), 364 Mo. 121, 260 S.W.2d 573; Repple v. East Texas Motor Freight Lines, Mo.Sup., 289 S.W.2d 109; Clemons v. Becker, Mo.Sup., 283 S.W.2d 449; Dansker v. Dansker, Mo.App., 279 S.W.2d 205, 209.

Appellants' third and final assignment is:

"The use of a roadway for the prescriptive period in the required manner creates an easement appurtenant."

This also is an abstract statement incomplete in itself. It points to no error which we are to review.

For the foregoing reasons we are of the opinion that the judgment of the lower court must be affirmed.

Moreover, we have examined the record and are of the opinion that the judgment was for the right party under the evidence.

All of the lands herein concerned lie in the neighborhood of Current River in Dent County. The plaintiff's land, which is sought to be made servient to the easement, is rough or rolling, is now partially cleared and is what might be referred to as woods pasture. Plaintiff acquired his land by two separate purchases, the first about 1923 and the last, from one Spencer, about 1936. The way in dispute appears to lie across the land acquired from Spencer. This last purchase was subject to the reservation in the seller of the right to cut and remove certain timber. Between 1936 and 1938 plaintiff fenced such land but left gates on the east and west sides. He said this was for his own convenience and also because it was necessary to give Spencer a way out in removing the reserved timber. Thereafter and from time to time plaintiff conducted logging and woodcutting operations on his land and occasionally sold timber and wood to others who conducted such operations. He testified that to facilitate this operation logging trails were made over the land. Quite evidently an old road or trail (depending upon whose language we use) had existed somewhere across the land prior to its acquisition by the plaintiff, but plaintiff said this was impassable when he bought the land and that about 1938 he made a different road in a new location which he said was "around the side of the hill from the old one," and this appears to be the way in question here. Plaintiff testified that the new road was a "logging trail" usable and necessary to him for the purpose of taking out logs and wood but difficult to travel in an automobile. That the road, which he referred to as a logging trail, was sometimes obstructed by logs and the tops of felled trees. That the road or trail had not been used by anyone except himself and others who were

engaged in the cutting of wood or logging operations since he acquired the land and fenced it. That some ten or eleven years before trial date (which would be 1944 or 1945) fox hunters had left the gates on the place open and his cattle had gotten out and that he locked such gates. That some five or six years prior to the trial (which would be approximately 1949 or 1950) the wooden gate on the east side of his premises was destroyed by fire and he replaced it by fencing across the space with woven wire. In general, plaintiff's statements were substantiated by other witnesses.

In 1942 defendant Bolin purchased what is called the baseball camp farm which lies to the north and west of plaintiff's land. In 1953 Bolin purchased what is referred to as the Dent farm, which adjoins plaintiff on the east, and this controversy arose because defendant asserted the right to travel between his two farms across the plaintiff's land and over and along the trail or road in question. Defendants produced evidence by several witnesses that there had been general travel by various persons in the neighborhood and others of the public who so desired over and across the plaintiff's land. It is to be noted, however, that most of this evidence in respect to general neighborhood or public travel covered a period extending roughly from 1929 to 1936.

Two of defendants' witnesses, Vernon Dent and Arch Dent, were members of the family which formerly owned the last farm purchased by defendant Bolin. These witnesses testified that the road through plaintiff's land had been traveled by their family and the neighborhood continuously or constantly for a longer period. Vernon Dent said it had been so traveled to his knowledge from 1918 to 1949. This witness said that he had had trouble with Cook about the road. He testified (not necessarily in relation to the trouble) that upon one occasion there was a lock on the gates entering plaintiff's land for a period of three or four weeks, but he did not say when it was. Arch Dent testified that the road had been traveled continuously from 1917 to 1952. He said, however, that he moved away from the place in 1934. When asked whom he had seen travel the road since 1934 his answer was, "In deer season I would say a number of cars crossed there." This witness further testified that about 1933 (?) his wife taught school at the Alred schoolhouse, which was located somewhere near (but not on) the opposite (west) side of plaintiff's land from the Dent place, and that she rode a horse back and forth along the road or trail in question. That on one occasion plaintiff put a fence across the road but left a gap or place where she could go around on horseback at some place off the road. He said that plaintiff removed this fence sometime later. Defendants' witness Cummings stated that the last time he traveled the road (apparently sometime shortly after 1936) he found a fence across one prong of a "Y" in the road at some place on plaintiff's land and was compelled to leave his car and walk the rest of the way. Defendant Bolin testified that he had had no occasion to use the road or trail in question until he bought the Dent farm. He admitted that upon one occasion after he bought the Dent place he asked of and received permission from the plaintiff to drive a lime truck across plaintiff's land and over the road in question. On this occasion it would appear that it was necessary to cut the fence or gate in order to secure this passage. Defendant's explanation of his request for permission was that the equipment was heavy and he was afraid something might be spilled and that he asked permission as a matter of courtesy. He testified that he used the road or trail on other occasions after he bought the Dent land without requesting permission. It appears in the evidence, however, that sometime in 1954 he shot a deer on the Dent place and, finding the gate nailed up, was unable to take it to his home on the baseball farm. He remonstrated with plaintiff's son, who suggested that "I go

around." Plaintiff testified that thereafter he found his gates down and his cattle out and that he locked the gates with chain and padlock. Bolin on two occasions cut the locks and went through, and his actions in so doing precipitated this lawsuit.

■ There was no evidence of any formal dedication or opening of the road by proceeding in the county court, nor was there any evidence of user by the general public for the prescriptive period prior to 1887. Neither was there any evidence that public money or labor had been spent upon the road or trail at any time. Therefore defendants failed to establish a public road by prescription. Leiweke v. Link, 147 Mo. App. 19, 126 S.W. 197; George v. Crosno, Mo.App., 254 S.W.2d 30; Sellers v. Swehla, 364 Mo. 285, 261 S.W.2d 26; State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653.

■ We find no probative evidence which might tend to establish a user as an easement appurtenant except from the two Dent witnesses, whose credibility was subject to evaluation by the circuit judge, to whom we ordinarily defer in matters of that kind. But, putting aside the question of credibility and deference, we think the weight of the evidence was with the plaintiff and that no private easement was acquired. Prescriptive rights are no favorites of the law. Each claim to a prescriptive easement must be determined on its own peculiar facts, and if there is doubt as to the character of use or intention of the parties it must be resolved in favor of the free and untrammeled use of the land. Bridle Trail Association v. O'Shanick, Mo. App., 290 S.W.2d 401; Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844; Marshall v. Callahan, Mo.App., 229 S.W.2d 730, 734. It devolves upon the person so claiming to prove by clear and cogent evidence all the necessary elements to establish such easement, to-wit, open, continuous and uninterrupted use for the prescriptive period of ten years under a claim of right, with actual notice to the owner or under such

conditions which will show or infer such notice. Miller v. Berry, Mo.App., 270 S.W. 2d 666; Robbins v. Anderson, Mo.App., 274 S.W.2d 809; Burnett v. Sladek, Mo. App., 251 S.W.2d 397.

■ Assuming that the members of the Dent family, together with their neighbors and members of the general public, traveled over the road or trail at will prior to 1936, such land was at that time wild, unfenced, open woods. It is held that the open, notorious, continuous and uninterrupted user for the prescriptive period without explanation as to how it commences creates a presumption (an inference?) that the user was not permissive and casts the burden upon the owner to prove such user was by license, indulgence or agreement. Smith v. Santarelli, Mo.App., 207 S.W.2d 543; Gerstner v. Payne, 160 Mo. App. 289, 142 S.W. 794; Meyer v. Everett, Mo.App., 235 S.W.2d 130. But where the user is of or over unenclosed rough woods, brush, prairie or wasteland the presumption does not apply. Burnett v. Sladek, supra, 251 S.W.2d 397; Zinser v. Lucks, supra, 235 S.W.2d 844; Annotation, 170 A.L.R. 820. A discussion of this subject, with citations, appears at Miller v. Berry, supra, 270 S.W.2d 666, 668, which concludes with the statement that the rule, i. e., presumption against permissive use, "usually has been applied where there has been a complete failure of proof that the user was permissive." Another pertinent discussion will be found at Bridle Trail Association v. O'Shanick, supra, 290 S.W.2d 401, 405, 406. There is authority to the effect that the use of vacant, unenclosed and unoccupied land will be *affirmatively presumed* to have been by permission and not adverse. Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, quoting 39 C.J.S., Highways, § 23, p. 942. It is common knowledge that the wild, wooded brush and prairie sections of the Ozarks are finely veined with trails both old and new where under the drifting leaves may be found vestiges of foot and wheel prints made by loggers, woodcutters, charcoal burners, ore haulers, deer hunters, fox

hunters, squirrel hunters, possum hunters, nut hunters, persimmon and pawpaw hunters, and just plain hunters, boat haulers, fishermen, occasional moonshiners, and also neighbors who simply like to "cut across the ridge." But these users are not ordinarily adverse to the title of the owner. They are simply the product of easygoing friendship and good neighborliness of the Ozark folk, where dog-in-the-manger attitudes are rare and the privilege is *taken for granted*. Such uses are usually permissive.

*If* the Dent family commenced the user of the premises prior to 1936, there is therefore no presumption that the user was adverse, and if it is necessary to say that any presumption exists at all (the burden was on the defendants to prove their easement), it is, under the circumstances here related, that such user was permissive. A permissive use will not, of itself, ripen into an adverse use until there has been some overt act which will give notice to the owner of the changing character of such use. Seested v. Applegate, Mo.App., 26 S.W.2d 796; Freed v. Greathouse, 238 Mo.App. 470, 181 S.W.2d 41; Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571. When the lands were fenced and the plaintiff-owner placed gates and maintained a road for his convenience, and *if* the members of the Dent family continued to use the road as theretofore, then the Dents were only continuing in their permissive use.

It is not disputed that the plaintiff did some work, even some grading at places, upon the road and that he maintained gates thereon. It is held that the user of a way provided by the owner for his own convenience, without interference with the owner or some overt act or adverse assertion on the part of the person making such use, is presumed to be permissive. Anthony v. Kennard Bldg. Co., 188 Mo. 704, 87 S.W. 921, 926; 28 C.J.S., Easements, § 18, p. 668. We find nothing in the acts of anyone prior to the fence- and lock-cutting episodes which brought about the present controversy which indicates any assertion of an adverse or hostile right.

Furthermore, the evidence most favorable to the defendants does not show clearly and cogently that the user claimed by the defendants was continuous and uninterrupted. To the contrary, there are incidents and occasions which would indicate that the plaintiff-owner exercised a dominion over the road which was contrary to any acquiescence in an untrammeled right of travel by others; thus in fencing across the road (whatever date it was) and forcing Arch Dent's wife on horseback to leave the road and go around; thus in locking the gates for some period and at some time prior to the immediate episodes which brought about this suit. See 46 A.L.R.2d 1153; 28 C.J.S., Easements, § 18, pp. 666, 667. And weight is added to respondent's theory of maintained dominance, and to permissive use, by the apparent recognition of such dominance when defendant Bolin asked permission to take his lime truck across the land. While of course such request could not obliterate a prescriptive right already vested, it is potent evidence tending to show that the previous user was not adverse. See 17 Am. Jur., Easements, sec. 72, p. 981; see Bridle Trail Association v. O'Shanick, supra, 290 S.W.2d 401, 407.

The judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.