**Mary F. PHILLIPS, Trustee of the Mary F. Phillips Trust; Mary F. Phillips, Roger Phillips, and Donna J. Payne, Trustees of the Victor E. Phillips Trust; and Roger E. Phillips, Respondents,**

v.

**Lloyd J.T. SOMMERER and Lena Jane Sommerer, Appellants.**

No. WD 50808.

Missouri Court of Appeals, Western District.

March 19, 1996.

Jean Feather, Jefferson City, for appellants.

James W. Gallaher, Carson & Coil, P.C., Jefferson City, for respondents.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

For many years, owners of a farm adjacent to Lloyd and Lena Jane ("Jean") Sommerer's farm in Cole County used a primitive road across the Sommerer property to get to a

public highway. When the Sommerers suddenly decided to close the road, the owners of the adjacent farm, Mary Phillips and her son Roger, sued for the circuit court's declaration that they had a prescriptive easement to use the road. The circuit court ruled for the Phillipses. The Sommerers appeal. We affirm the circuit court's judgment with a minor modification.

Victor and Mary Phillips [1] bought the farm adjacent to the Sommerers' farm in April 1969. The only road from their farm to Route H was a gravel road across the Sommerer farm. The Phillipses used the road for 20 years.

The road's existence dates back to the 1920s when the Ott family owned the Phillipses' land and used the road to get to a public road. No one seems to have questioned or interfered with the Otts' use of the road.

In 1946, Alvin Erhardt bought the Otts' farm. Erhardt owned the property until his death in 1964. He used the road continuously and without interruption during his life. His children acquired the property in 1965, and they sold it to the Phillipses in 1969.

The Sommerers acquired their farm in 1973 from Lloyd Sommerer's parents, Adolph and Theresa Sommerer, who bought it in 1946 from Andrew and Mary Louise Stroessner. The Stroessners had bought the property during the 1920s.

The only obstructions across the road were "hot wires," put there by the Sommerers to keep their cattle from escaping, and a movable post with barb wire which the parties referred to as a "gap." In 1989, tenants of the Phillipses' farm notified Roger Phillips that the makeshift gate had a lock on it. Roger Phillips cut the lock off and opened the gate. Phillips later had to cut off a second lock placed there by Lloyd Sommerer. After a third lock appeared on the gate, Roger Phillips drove to the Sommerers' home to discuss the matter. Roger Phillips told Lloyd Sommerer that he had some bolt cutters to cut any more locks put on the gate. Lloyd Sommerer responded that he had a shotgun. The Phillipses then filed this law-

suit for declaration of a prescriptive easement to use the road.

The circuit court convened a hearing in June 1994. In January 1995, the circuit court entered judgment for the Phillipses. The circuit court found that the gravel roadway had been used for more than 70 years by the Phillipses and their predecessors in title as a means of ingress and egress. The court also found that the Phillipses and their predecessors in title used the road continuously, without interruption, visibly and adversely and that the Sommerers did not prove that the use was permissive. The court concluded that the Phillipses had acquired a prescriptive easement to use the road. The Sommerers appeal.

■ The Sommerers contend that the trial court erred in relying upon the presumption of adverse use. They claim that the presumption did not apply because they presented evidence of permissive use.

■ A user may acquire a prescriptive easement over the land of another by continuous, uninterrupted, visible, and adverse use which endures for at least 10 years. *Moss v. Ward*, 881 S.W.2d 238, 241 (Mo.App.1994). In the absence of a showing that the use was permissive in its origin, and where the use has been open, continuous, visible and uninterrupted for 10 years, the courts presume that the use was adverse and under a claim of right. This shifts the burden to the landowner to show that the use was in fact permissive rather than adverse. *Id.*; *Speer v. Carr*, 429 S.W.2d 266, 268 (Mo.1968).

The Phillipses established without contradiction that the previous owners of their property had used the road for access since at least the 1920s. They also established that this use had been open, continuous, visible and uninterrupted for nearly 70 years. This was sufficient to raise the presumption that the road's use was adverse.

The Sommerers respond that the presumption of adverse use vanished because of their substantial evidence of permissive use, *Bridle Trail Association v. O'Shanick*, 290 S.W.2d 401, 406 (Mo.App.1956), and was in-

1. Victor Phillips is deceased.

applicable because of evidence that the previous owners of the Phillipses' property had permission to use the road. They direct our attention to Lloyd Sommerer's testimony that his father had given Alvin Erhardt permission to use the road and to Jean Sommerer's testimony that Mary Phillips had asked permission for her son to use the road in 1984. This testimony was inconsistent, however, with Jean Sommerer's previous deposition testimony in which she said that she did not recall ever talking with the Phillipses about their using the road. The circuit court, as trier of fact, was free to disbelieve Lloyd Sommerer's testimony.

The Phillipses' evidence contradicted the Sommerers' testimony that use of the road was permissive. Mary Phillips said that when she and her husband bought the farm in 1969, the real estate agent told them to use the roadway crossing through the Sommerer property. She said that her family had used the road for 20 years and that she believed they had a right to use it. She said that she never asked permission to use it because she did not believe the Sommerers had a right to deny her family use of the road. She said that the Sommerers' using a "hot wire" to prevent cattle from escaping did not prevent her family from using the road. She said that the only conversation she ever had with Jean Sommerer concerning use of the road was in 1990, after the dispute between Roger Phillips and Lloyd Sommerer. This conversation involved a neighbor boy's using the road to get to the Phillipses' farm to hunt deer because Mary Phillips had concerns about the boy's safety if he used the road at that time.

Cornelius Erhardt testified that his father, Alvin Erhardt, had used the road when he owned the Phillipses' farm without asking for permission. After his death, Alvin Erhardt's children acquired the property until 1969. Cornelius Erhardt said that timber cutters had used the road in 1966 for several months without permission. He said that he had asked the Sommerers for a written easement, but they refused to give him one.

Elsie Knerschield was a member of the Ott family which owned the Phillipses' farm from the 1920s until the 1940s. She said that her family used the road when the Sommerers' farm belonged to the Stroessner family. She said that the Stroessners saw them using the road without stopping them although her family had not asked permission to use it.

Elmer Englebrecht, related to the Otts, recalled being on the Ott family farm during the 1920s. He said that he used the road to get to the Ott farm and that no one told him he could not use it. He said that the Otts used the road for approximately 30 years and never asked permission. He said that he used the road without regard to whether the Sommerers would have permitted or denied his use of the road because he believed that he had a right to use it without Adolph Sommerer's permission.

Roger Phillips said he acquired a one-third interest in his parents' farm property in 1993. From the 1970s to the mid–1980s, he helped his father raise cattle on the property, he said, and used the road openly and continuously. He said that his family used the road because it was "our road to use to get into our farm." He said that his family never asked for permission to use the road because "it was ours" and because his father told him that "it was our road to use." He indicated that he used the road without concern for whether the Sommerers had a right to permit or deny its use. He also said that he and his father had maintained and graded the road at times with a tractor and grading equipment.

■ The Sommerers' contend that the Phillipses' maintenance of the road was not an assertion of a claim of right. They rely on *Homan v. Hutchison,* 817 S.W.2d 944 (Mo.App.1991), but their reliance is misplaced. This court did say in *Homan,* "That the [party claiming a prescriptive easement] maintained the road is not an assertion of [a right hostile to the true owner]." *Id.* at 950. The reason that this was true in that case, however, was not because maintaining a road can never be an assertion of a claim of right but because the plaintiff admitted using the road with permission and he believed that the road was a public road. Also, the court noted that the fee simple owner of the road had consented to the plaintiff's maintaining the road. Obviously, maintaining a road un-

der such circumstances, not present in this case, would not constitute an assertion of a claim of right.[2]

The circuit court had a sufficient basis for concluding that the Phillipses' use was not permissive. We conclude that, unlike the situation in *Homan*, the Phillipses' maintenance did show an assertion of a claim of right.

■ The Sommerers cite *Cook v. Bolin*, 296 S.W.2d 181 (Mo.App.1956), for the proposition that permissive use can be inferred from a cordial relationship between adjoining landowners. The *Cook* court did say:

> It is common knowledge that the wild, wooded brush and prairie sections of the Ozarks are finely veined with trails both old and new where under the drifting leaves may be found vestiges of foot and wheel prints made by loggers, woodcutters, charcoal burners, ore haulers, deer hunters, fox hunters, squirrel hunters, possum hunters, nut hunters, persimmon and pawpaw hunters, and just plain hunters, boat haulers, fishermen, occasional moonshiners, and also neighbors who simply like to "cut across the ridge." But these users are not ordinarily adverse to the title of the owner. They are simply the product of easygoing friendship and good neighborliness of the Ozark folk, where dog-in-the-manger attitudes are rare and the privilege is *taken for granted*. Such uses are usually permissive.

*Id.* at 188 (emphasis in original). This description hardly describes the Phillipses' or their predecessors' use. They were not occasional or seasonal users. They were frequent, everyday users year after year. As was said in *Brown v. Evans*, 182 S.W.2d 580, 583 (Mo.1944), "Occasional entries or temporary use or occupation, are insufficient to establish [the] actual possession which is necessary to manifest adverse possession." *Cook* does not aid the Sommerers.

They also claim that Alvin Erhardt's being a cousin of Theresa Sommerer was inconsistent with a presumption of adverse use. They assert that the presumption of adversity disappears when the user and the landowner are related by blood. In support, they cite *Denton v. Ipock*, 652 S.W.2d 290 (Mo.App.1983), and Richard R. Powell, *The Law of Property*, § 34.10 (1994). *Denton* is distinguishable on its facts and does not support this proposition. The case examples cited in *The Law of Property*, § 34.10, involved "a close family relation," such as parent and child or siblings and are not instructive in this case.

■ Nonetheless, whether the road's use was permissive or adverse was a matter involving the credibility of the witnesses. *Harmon v. Hamilton*, 903 S.W.2d 610, 613 (Mo.App.1995). The circuit court, as trier of fact, was free to believe or disbelieve all, part or none of the testimony, even if it was unimpeached or uncontradicted. *Id.* The circuit court obviously believed the testimony presented by the Phillipses that use of the road was not permissive. The circuit court was the ultimate judge of witness credibility, and we are bound by its determination. *Meyer v. Pierce*, 753 S.W.2d 79, 80 (Mo.App. 1988).

■ Mary Phillips' asking for permission for a neighbor boy to use the road did not destroy the prescriptive right already established. Permission given after an easement has already been established by adverse use has no legal effect. *Behen v. Elliott*, 791 S.W.2d 475, 478 (Mo.App.1990). A subsequent request for permission to use the road does not obliterate a previously vested prescriptive right. *Gault v. Bahm*, 826 S.W.2d 875, 882 (Mo.App.1992).

---

2. We must add, however, that the Sommerers' confusion on the issue probably was caused in part by an inadvertent comment in the Homan decision. The Homan court said, "In *Cook v. Bolin*, 296 S.W.2d 181, 188 (Mo.App.1956), the person seeking an easement, 'did some work, even some grading at places, upon the road and ... maintained the gates thereon.' This was not held to be an adverse assertion to permissive use. *Id.*" The court was wrong; the person maintaining the road in Cook was not "the person seeking an easement." He was the landowner who was suing persons he alleged to be trespassing on the private road he was maintaining on his land. The issue was whether the landowner's beginning to maintain the road after years of the alleged trespasser's use of what previously had been only a trail changed the use from permissive to adverse. The Cook court concluded that it did not.

 The Sommerers also claim that the Erhardt children's failure to include the easement in the deed when they conveyed the property to the Phillipses in 1969 was evidence of permissive use. We disagree because the evidence showed that a prescriptive easement, which "ran" with the land, had already been established before the Phillipses acquired their land. Transfer of ownership did not extinguish the easement. It was an appurtenant to their property and passed to the Phillipses even though the deed did not mention it. *See Speer,* 429 S.W.2d at 269.

 The Sommerers further contend that the circuit court's finding that a prescriptive easement existed was wrong because the Phillipses did not show that the Sommerers had notice that their use was adverse. For use to be considered adverse, the user of land need not intend to violate the landowner's rights so long as he establishes that he acted without recognition of any authority by the landowner to permit or to prohibit his use. *Umphres v. J.R. Mayer Enterprises, Inc.,* 889 S.W.2d 86, 89 (Mo.App.1994); *Johnston v. Bates,* 778 S.W.2d 357, 362 (Mo.App. 1989). Visible, actual use commonly serves as valid notice to the landowner. *Umphres,* 889 S.W.2d at 89. Notice can be actual or constructive, *Fenster v. Hyken,* 759 S.W.2d 869, 870 (Mo.App.1988), and the trier of fact can infer it from the facts. *Auxier v. Holmes,* 605 S.W.2d 804, 809 (Mo.App.1980).

The circuit court had sufficient evidence to support its conclusion that the Phillipses' and their predecessors' use was open, visible and continuous. It had sufficient evidence from which to infer that the Sommerers and their predecessors had adequate notice of the adverse use.

Finally, the Sommerers contend—as the Phillipses concede—that the trial court made a typographical error in its judgment. We agree and correct this error. Both parties agree that the circuit court's reference to "paragraph 1" in line 13 of paragraph 3 of the "Judgment Entry" was inadvertent. The order should have said "paragraph 2."

This court can correct such errors on appeal, Rule 84.14, so, we hereby modify the circuit court's judgment to reflect this change. In all other respects, we affirm the circuit court's judgment.

All concur.