261 S.W.2d 19 (1953)
WILSON et al.
v.
OWEN et al.
No. 43428.
Supreme Court of Missouri, Division No. 1.
September 14, 1953.
Motion for Rehearing or to Transfer to Denied October 12, 1953.
*20 L. M. Crouch, Jr., Harrisonville, Lyman J. Bishop, St. Louis, for appellants.
Adams & Adams, Kansas City, C. E. Groh, Harrisonville, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied October 12, 1953.
CONKLING, Judge.
This is an appeal from a declaratory judgment and decree that all covenants, restrictions and stipulations contained in a plat of Neff Lakes, a subdivision of land in Cass County, Missouri, "including the privileges of swimming, boating and fishing in the lakes in said subdivision were terminated on and after May 1, 1942, and that defendants have no such privileges, either by reason of the recorded plat of said subdivision or otherwise." From the judgment below defendants have appealed. The trial court having declared and decreed *21 the termination of certain existing easement rights of defendants, the title to real estate is involved and jurisdiction of the appeal is in this court. Article V, Section 3, of the Constitution, V.A.M.S.; Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552; Greisinger v. Klinhardt, 321 Mo. 186, 9 S.W.2d 978; Toothaker v. Pleasant, 315 Mo. 1239, 288 S.W. 38; Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, 847[2]; Larkin v. Kieselmann, Mo.Sup., 259 S.W.2d 785; Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894[1].
The purported termination was by declaration in an instrument executed on October 17, 1941, and filed of record on October 20, 1941, by Willie Elmyra Neff, as survivor of the proprietors and dedicators of the land who had held title to Neff Lakes as tenants by the entireties, and purportedly acting under paragraph 9 of the restrictions hereinafter set out. The purported termination, however, undertook to declare at an end "each and every of the covenants, restrictions, stipulations and privileges" set out on the above mentioned plat.
The petition alleged that plaintiffs (assignees of the original proprietors) owned certain described land in Neff Lakes Subdivision; that defendants owned various described lands and lots therein; that plaintiffs own Blocks A and B therein, each with a lake thereon; that those two artificial lakes were constructed by the original proprietors, are not navigable, contain fish and the rights to fish in such lakes are a valuable property right of plaintiffs; that the original plat of Neff Lakes was filed of record by George N. Neff and Willie Elmyra Neff, his wife, as proprietors, on May 26, 1927, whereon it was recited that George N. Neff and Willie Elmyra Neff, "the undersigned proprietors of the above described tract of land have caused the same to be subdivided," etc., and the lands thereof were made subject to the restrictions thereon set out; that the declaration of termination filed by Willie Elmyra Neff recited that she was "the owner of land in Neff Lakes * * * (and) owns a majority of the front footage of all lands in said subdivision"; that notwithstanding the purported termination defendants contend the privileges of the use of said lakes are still in force and effect; and the petition prayed a declaration and judgment that the covenants, restrictions, stipulations and privileges set out on the plat have been terminated.
The above referred to restrictions, all set out on the plat, except paragraphs 1 to 7, inclusive, (which granted no privileges but which contained only ordinary building, sanitation and race covenants, restrictions and stipulations) are as follows:

"Restrictions on Neff Lakes.
"All persons who shall acquire any interest in any land in this subdivision shall be taken and held to agree and covenant with the proprietors named in this plat, and with their heirs and assigns, to conform to and observe the following covenants, restrictions and stipulations as to the use thereof and the construction of residences and other improvements thereon, to-wit:

* * * * * *
"8. The purchasers of lands in this subdivision shall have the privileges of the use of the lakes constructed or built, or to be constructed or built, and owned by the proprietors of this subdivision, for swimming, boating and fishing purposes; but such privileges, however shall at all times be subject to the rules and regulations of said proprietors or to the heirs or assigns of said proprietors, or of any organization or committee to which the control of such lakes may be given.
"9. The foregoing covenants, restrictions and stipulations shall continue in force for a period of ten (10) years from the 1st day of May, 1927, and thereafter shall be automatically renewed for successive periods of 5 years each, unless the owners of a majority of the front footage of all lands in the subdivision shall, not less than 6 months prior to the expiration of first period of 10 years, or not less than 6 months prior to the expiration *22 of one of said successive periods of 5 years each execute, acknowledge and file for record in the office of the Recorder of Deeds of Cass County, Missouri, an instrument in writing declaring such covenants, restrictions and stipulations void after the expiration of the then existing period thereof.
"10. The foregoing covenants, restrictions and stipulations shall be covenants running with the land, and shall bind and inure to the benefit of the proprietors of this subdivision, and all parties claiming by, through or under them, and it is agreed that for the purpose of enforcing the said covenants, restrictions and stipulations that the proprietors of this subdivision, their heirs or assigns, or any person owning any interest in any of the lands in said subdivision, may institute and maintain injunction or other proper proceedings in any court of competent jurisdiction to prevent a violation of any of said covenants, restrictions or stipulations as well as proceedings to recover damages for injuries sustained by reason of any violation or of any attempt to violate."
Defendants' answer alleged they purchased their lots at an auction sale conducted on the property by the original proprietors on May 28, 1927, two days after the plat was filed; alleged that in the advertising for said sale and at said sale it was represented and stated that the boating, swimming and fishing privileges in said lakes would run with the land and lots which would be sold and would be for the exclusive use of such lot owners in perpetuity, and that such easement privileges of boating, swimming and fishing were a major portion of the value of the lots so purchased; alleged that George N. Neff died May 4, 1933, and Willie Elmyra Neff, as surviving "proprietor" was not an "owner" entitled to file a declaration of termination under paragraph 9 above of the restrictions; alleged that the privileges of boating, swimming and fishing granted by paragraph 8 above were not covenants, restrictions or stipulations which could be declared void under any power stated in paragraph 9 above; and defendants' answer prayed a declaratory judgment that the above purported termination executed and filed as above by Willie Elmyra Neff be declared void and of no effect; and prayed that defendants be declared entitled to the privileges of paragraph 8 above.
The facts as above reflected are largely either stipulated or not disputed. It further appears that, computed on the basis of dedicated streets shown on the plat before us, whether or not said streets were actually opened or remained opened, Willie Elmyra Neff owned a majority of the total front footage of all lots and land in the subdivision at the time her purported termination was filed; that the proprietors parted with the title to less than fifty per cent of all the front footage of land in the subdivision, but there is no evidence that they retained more than half the total front footage for the mere purpose of retaining the right to terminate the covenants, restrictions and stipulations; that plaintiffs obtained title to their land in Neff Lakes by a deed dated August 30, 1946, from the Guardian and Curator of the Estate of Willie Elmyra Neff, an Incompetent, "subject to any and all the burdens upon it or upon any part of it existing by reason of the plat and dedication of said land as Neff Lakes herein described, and to all conditions existing by reason thereof"; that the sale bills advertising the auction of the lots and acreage by the proprietors on May 28, 1927, which had been theretofore distributed throughout the community, advertised lots and acreage for sale as homesites on beautiful spring-fed Neff Lakes, showed various attractive pictures of the lakes, and stated, "The spring waters in Neff Lakes are for the Exclusive Use of owners of homesites and acres in Neff Lakes Subdivision. Boating, bathing, and fishing privileges go with the property"; and that in a half page newspaper advertisement of the auction which was published in the Cass County Democrat, just preceding the auction of lots on May 28, 1927, there appeared in large type "Boating SwimmingFishingNatural GasElectricity, *23 * * * Privileges of Lakes Are Restricted to Owners of Homesites and Acres."
It further appears that the Neff Lakes Subdivision is located just north of Belton, Cass County, Missouri, on Highway 71, and that it was incorporated into the City of Belton in 1951; that the Frisco Railroad right-of-way divides the subdivision; that of the seventy-two lots east of the railroad only five were not sold at the 1928 auction; that some lots west of the railroad and on the lake in Block "B" were also then sold; that at the auction the auctioneer several times made a complete announcement guaranteeing to purchasers of property in the subdivision the privileges of fishing, boating and swimming in the lakes.
Several of the original purchasers of lots at the 1928 auction testified that up to trial time in 1952 they had never been refused permission to use the lakes; some of the defendant lot owners testified that they bought lots solely to be able to exercise the privileges of swimming, boating and fishing; and that the value of the lots "was about double with the lake privileges." It further appears that some of the streets and avenues within the subdivision were never graded or opened, and that only a few houses were built in the subdivision, principally along Highway 71 which extends in a north and south direction along the east side of the subdivision. The separate deeds of the defendants to their land in this subdivision each recite that each such conveyance is "subject to the covenants, restrictions and stipulations set out on the recorded plat of said subdivision."
In its declaratory judgment the trial court specifically found that plaintiff Walter Wilson is the owner of the two lakes and the lands having lakes thereon; that the privileges contained in paragraph 8 above and appearing on the plat "are covenants and stipulations referred to in paragraph 9 of said plat and such privileges, as such, were terminated by the instrument declaring said covenants and stipulations void, executed by Willie Elmyra Neff on October 17, 1941; * * * that Neff Lakes was never successfully developed, as intended, as a summer home or resort-type development; that the general purpose of the agreement between the proprietors and purchasers of lots was never achieved; and that the enforcement of said paragraph 8 for the benefit of a few lot owners would impose such a hardship on the proprietors and their grantees as to render such an enforcement inequitable." The trial court thereupon declared the covenants and privileges terminated as of May 1, 1942.
The defendant property owners in Neff Lakes, who in this action seek a declaratory judgment that they have the easement privileges granted them in paragraph 8 above, contend that those privileges are not "covenants, restrictions and stipulations" within the meaning of those words as used on the plat such as could be declared terminated under any authority granted in paragraph 9 above. This contention calls for a construction of the plat. Primarily, the question is one of intention, and the meaning of the words used on the plat is governed by the intention of the parties. The entire context of the writing on the plat must be considered. While unambiguous language thereon will be given its manifest meaning, any doubt or ambiguity in the meaning of the plat or any writing thereon is to be construed strongly against the dedicators. 26 C.J.S., Dedication, § 49, page 131; Van Deusen v. Ruth, 343 Mo. 1096, 125 S.W.2d 1; Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, 607, 95 A.L.R. 452; Berry on Restrictions on Use of Real Property, § 35, p. 54 et seq. Where the meaning is in doubt the surrounding circumstances may be considered to determine intention. 14 Am. Jur., Covenants, § 211, p. 620. The exact meaning of words used in an agreement depends on the kind and character of the agreement itself, its purposes and circumstances, and the context. Van Deusen v. Ruth, supra.
In this case there was no question directly raised or tried as to any of the covenants or restrictions respecting the ordinary and usual building restrictions *24 specifically set out in paragraphs 1 to 5 on the plat; nor as to the sanitary stipulation or requirement in paragraph 6 thereon that no owner or occupant of any land in the subdivision will permit refuse of any kind to reach any lake or spring in the subdivision; nor as to the covenant in paragraph 7 that no land of the subdivision shall be sold, assigned or conveyed to or occupied by other than white persons. The covenants, restrictions and stipulations in paragraphs 1 to 7, inclusive, were negative in character and were "thou shalt not" in nature. They forbade the erection of any business buildings; the erection of more than one building on certain lots; the erection of any residence nearer than 25 feet from the front lot line; the erection or use of unpainted or unsubstantial dwellings; the erection of outbuildings nearer than 125 feet to the front lot line; the disposition of refuse into any lake or spring; and selling to or occupancy of any land "by any other than white persons." Paragraphs 1 to 7 were truly restrictive covenants and agreements and were in the nature of negative easements.
The only thing instantly at issue or tried below was the existence or nonexistence of the privileges granted by paragraph 8, set out above. The thing granted by paragraph 8 to "purchasers of land in this subdivision," was "the privileges of the use of the lakes * * * for swimming, boating and fishing purposes." Those privileges were affirmative rights and easements peculiar to the persons or class of persons upon whom they were conferred by virtue of purchase of property in the subdivision, and which were not possessed by others. The easement privileges granted by paragraph 8 are quite contrary in character to the "thou shalt not" negative and restrictive covenants of paragraphs 1 to 7, inclusive. These privileges of paragraph 8 permit the doing of affirmative things and authorize the exercise of affirmatively and separately granted rights and easements.
In Vol. 3 of Tiffany, Real Property, 3rd Ed., § 756, p. 201, it is said: "Easements are sometimes divided into affirmative and negative. An affirmative easement is one which authorizes the doing of acts which, if no easement existed, would give rise to a right of action, while a negative easement is one the effect of which is not to authorize the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from the doing of an act which, if no easement existed, he would be entitled to do. In other words, an affirmative easement involves the creation of a privilege, while a negative easement involves the withdrawal of a privilege."
We think the intention of the dedicators may be concluded from the character of the provisions on the plat, the words used, their context, the paragraphing, and from the facts and circumstances instantly of record.
It is clear that the "covenants, restrictions and stipulations" referred to on the plat are wholly different in concept and meaning from the "privileges" referred to on the plat. The word covenants, as used on the plat, restricted and limited the rights which the lot owners would ordinarily have had as owners of the property they purchased. The word privileges, as used on the plat, enlarged the rights the lot owners would ordinarily have had by granting to only the owners of lots in the subdivision an easement to use the lakes on the land of the proprietors "for swimming, boating and fishing purposes." Plaintiffs-respondents contend that paragraph 8 is an express covenant between the proprietors and the purchasers of land in the subdivision, and, as a covenant, is subject to revocation as set out in paragraph 9. But only in the sense that it is an agreement between them could paragraph 8 be even argued to be a covenant. And as above noted, it is a wholly different character of agreement from the covenants of paragraphs 1 to 7, inclusive. The opening paragraph of the "Restrictions on Neff Lakes," set out above, binds those persons "who shall acquire any interest in any lands in this subdivision * * * to conform to and observe" the thereafter stated covenants, *25 restrictions and stipulations "as to the use thereof and the construction of residences and other improvements thereon" only. Thus "covenants, restrictions and stipulations" are by the plat itself limited to such agreements as concern only the use of the land sold by the proprietors to others "and the construction of residences and other improvements thereon." No mention is made in that opening paragraph of the easement privileges granted by paragraph 8. And at no place on the plat are the privileges of paragraph 8 treated or considered as a covenant subject to being thereafter declared void as provided in paragraph 9.
It is the evidence before us that in both the sale bills and newspaper advertising of the auction of the lots it was represented by the proprietors that "boating, bathing and swimming privileges go with the property" and that "privileges of the Lakes Are RestrictedTo Owners of Homesites and Acres"; and purchasers testified: "I just bought it for the privileges on the lake, that was what I bought it for. I was interested only in the privileges." Those privileges were what the purchasers of the lots sought to acquire, and under this record were clearly a major portion of what they received. Not alone for their lots but for these privileges they paid the proprietors the money consideration which passed. Several of the original lot purchasers testified that up to trial time they had never been refused permission to use the lakes.
It is to be noted, and it is significant, that while paragraph 9 purports to grant a power to declare "such covenants, restrictions and stipulations void" under stated circumstances, that at no place on the plat was there reserved or granted by the proprietors any power to declare void or at an end any of the lake privileges granted in paragraph 8. And it also seems significant to us that in the instrument purporting to declare void the "covenants, restrictions and stipulations," filed by Willie Elmyra Neff, that she (or her cautious scrivener) inserted also the word "privileges," and thereby sought to void the easement privileges granted the lot owners in paragraph 8 and paid for by them.
We rule that there was no existing power to declare those easement privileges of paragraph 8 terminated. Those were privileges and easements which the lot owners had bought and paid for. Under the circumstances here existing the privileges of the use of these lakes was far more than a mere naked license or permission to do an act or a series of acts upon the real estate (or lakes) of the proprietors which was revocable at the mere will or desire of the proprietors. Even a license is irrevocable when coupled with an interest and supported by a valuable consideration, or when it is necessary to the possession or enjoyment of a right or privilege, which arose from the act or contract of the person who created or reserved the power. Baker v. Chicago, Rock Island & P. R. Co., 57 Mo. 265; Chiles v. Wallace, 83 Mo. 84; Lewis v. Kaplan, Mo.App., 5 S.W.2d 699, 701. In Clark on "Covenants and Interests Running With Land" (1947) p. 31, that author states: "But where consideration is given, at least, and the privilege is for a series of acts extending over a period of time, obviously something more is contemplated, and a promise against revocation should be implied." But this plat and the deeds to these defendants created far more than a naked license which, in relation to realty, is but a mere privilege to go upon the premises of another for a certain purpose, but does not operate to confer any interest, estate or easement in such premises. The instant plat and deeds operated to give defendants an affirmative easement in the use of the lakes for the mentioned purposes.
We have carefully examined the cases cited in the briefs filed. No case cited to us in either brief rules the precise question before us. Our research has not led us to any case which rules the instant question. The cited cases of Williams v. Diederich, 359 Mo. 683, 223 S.W.2d 402; Strauss v. J. C. Nichols Land Co., 327 Mo. 205, 37 S.W.2d 505; Van Deusen v. Ruth, supra; Haertlein v. Rubin, Mo.Sup., 195 S.W.2d *26 480; Greisinger v. Klinhardt, supra; Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S.W. 486; Zinser v. Lucks, supra, and others cited, did not rule this instant question.
We find nothing which supports or justifies the trial court's finding or conclusion that the privileges contained in paragraph 8 are covenants and stipulations referred to in paragraph 9 of the plat and, as such, that they were terminated by Willie Elmyra Neff. This record compels the contrary conclusion. In only one question and answer do we find any support for the trial court's finding or conclusion that Neff Lakes was never successfully developed as intended, that the general purpose of the agreement on the plat was never achieved, and that therefore the enforcement of the easement rights granted in paragraph 8 would impose a hardship and be inequitable. But there was no such issue of change of conditions rendering enforcement inequitable raised by the pleadings, and the cause was not tried below on any such theory. That one defendant testified that "Neff Lakes never did develop" cannot be construed as consent by defendants to the trial of an issue not pleaded or otherwise touched by the evidence in the case. Nor can the last above quoted isolated statement be considered a trial of an issue not pleaded. And in any event it cannot be said that the above statement of defendant Noland was not otherwise admissible. Sprankle v. Thompson, Mo. Sup., 243 S.W.2d 510.
The doctrine of cancellation or modification of negative restrictive covenants which run with land, because of a later change of condition which might render enforcement inequitable, can have no application here. That is true because the issue instantly tried was the validity of the purported and attempted cancellation of the affirmative easement privileges of paragraph 8, which were bought and paid for by defendants and which inured to defendants by the purchase and ownership of land in this subdivision.
It is our conclusion that equity must decree and declare that the purported and attempted termination filed for record by Willie Elmyra Neff on October 20, 1941, was not effective to terminate or void the easement privileges granted in paragraph 8 above, and that such privileges are now in full force and effect. Under the circumstances here appearing equity cannot countenance or permit the unilateral cancellation of the instant easement privileges of the use of the lakes by the proprietor when such action, as here, is over the protest and to the detriment of those who long ago and in good faith and for a valuable consideration acquired such easements.
Our conclusions above expressed render unnecessary any consideration or discussion of other points raised on this appeal.
The declaratory judgment entered below is reversed and the cause is remanded to the circuit court with directions to enter a judgment consistent with this opinion. It is so ordered.
All concur.