ANTON LEIWEKE, Appellant, v. ANDREW J. LINK, Respondent.

St. Louis Court of Appeals, February 21, 1910.

1. ROADS AND HIGHWAYS: Private Road: Prescription: Evidence. In an action to restrain the use of a private way across plaintiff's land, evidence *held* insufficient to show the use of the road was begun or continued under a license from the owners of the land, so as not to be adverse.

2. ————: ————: ————: Statute of Limitations: Adverse Use for Ten Years. After the year 1847, when the limitation period of actions to recover real property was reduced from twenty to ten years, the public might have acquired an easement by ten year's open, adverse and uninterrupted use under claim of right.

3. ————: ————: ————: Section 9472: Prospective Operation. Section 9472, Revised Statutes 1899, providing that when a road has not been opened by order of the county court no lapse of time shall divest the owner of the fee of his title, unless public money and labor have been expended upon it, does not operate retrospectively, and does not affect rights in a road that had been traveled for forty years before its enactment.

4. ————: ————: ————: **Case Stated.** A private way may be acquired by prescription, and where defendant and his ancestors occupying the farm now owned by him have used a way across plaintiff's land as appurtenant to their land for three generations without objection or interruption, and it does not appear that their use was under a license from the owners of the land, defendant has an easement in it as a way, and cannot be restrained from using it.

Appeal from St. Louis County Circuit Court.—*Hon. Wm. F. Broadhead,* Special Judge.

AFFIRMED.

*J. C. Kiskaddon* and *R. L. Shackelford* for appellant.

(1) A parol license may be revoked at any time. Pitzman v. Boyce, 111 Mo. 387; Nelson v. Nelson, 41 Mo. App. 130. (2) No mere user of a way, however long it may continue, can ripen into an easement. There must be an adverse claim in addition to the user, and this adverse claim must be known to the owner of the servient estate. Pitzman v. Boyce, 111 Mo. 387; Dunham v. Joyce, 129 Mo. 5; Nelson v. Nelson, 41 Mo. App. 130; Hurt v. Adams, 86 Mo. App. 73; Smith v. Sedalia, 152 Mo. 283. (3) To constitute a title to an easement by prescription four things must concur: First, user for a period of ten years or more; second, the user must be adverse; third, it must be under a claim of right; and, fourth, notice must be conveyed to the owner of the servient estate of the character of the user, and of the claim of right. Anthoney v. Building Co., 188 Mo. 704; Pitzman v. Boyce, 111 Mo. 387; Vaughan v. Rupple, 69 Mo. App. 583; McCune v. Goodwillie, 204 Mo. 306. (4) The burden is on the party claiming title to an easement by prescription to show by satisfactory evidence the adverse character of the user, at what time the adverse user began, that it was used under a claim of right, and that the owner of the servient estate had notice of the

adverse character of the user and of the claim of right. In other words, the claimant of an easement must affirmatively prove his title, and mere user alone is not sufficient. Anthoney v. Building Co., 188 Mo. 704; Lumber Co. v. Jewell, 200 Mo. 707; Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 440; Smith v. Sedalia, 152 Mo. 283. (5) Even where the owner of a servient estate has permitted the public to use a way across his land for a long period of time, yet the burden is on the public or other person asserting an easement by prescription to show that such user is adverse, under a claim of right and that the owner of the servient estate had notice of the character of the user, and of such claim of right. Chillicothe v. Bryan, 103 Mo. App. 409; Field v. Mark, 125 Mo. 502. (6) And the fact that the claimant has expended money or labor on the alleged easement so as to make it more useful to himself is not sufficient to make the use adverse. Pitzman v. Boyce, 111 Mo. 387; Lead Co. v. White, 106 Mo. App. 222. (7) A tenant for life can do no act, however solemn, which will, in any way, affect the title of the remainderman. So that notice to a life tenant of an adverse claim to an easement, or even the consent, express or implied, of such life tenant to an adverse user, would not in any way affect the remainderman. 2 Ency. Law and Prac., 481, 482, 484; Salmon v. Davis, 29 Mo. 176; Foote v. Sanders, 72 Mo. 616; Keith v. Keith, 80 Mo. 125; Hall v. French, 165 Mo. 430. (8) The statute declares what evidence shall be necessary to establish the existence of a public way. Among other things it provides, that "no lapse of time shall divest the owner of his title to his land, unless, in addition to the use of the road by the public for the period of ten consecutive years, there shall be public money or labor expended thereon for such period." R. S. 1899, sec. 9472.

*R. H. Stevens* for respondent.

(1)   The open, notorious and continuous adverse use of a road by the public for ten years conclusively establishes an easement of way in the public. State v. Walters, 69 Mo. 463; State v. Wells, 70 Mo. 635; State v. Proctor, 90 Mo. 334; Price v. Breckinridge, 92 Mo. 370; Powers v. Dean, 112 Mo. App. 288; Boyce v. Railroad, 168 Mo. 583; Delaney v. Railroad, 168 Mo. 599; Turner v. Railroad, 112 Mo. 542.   In the case at bar the public used the road uninterruptedly as a highway for fifty-five years, and in addition to said use they have for the last thirty-two years kept it in repair by working it once a year and sometimes twice a year. These facts make the use adverse and the claim open and notorious, and the burden is on plaintiff to show that the use began   by permission and continued by permission to the present time.   There is no such evidence in the record.   (2)   If one grants a close which is not accessible to a public road except over his own land he impliedly grants with it the right of passing over that land.   Chase v. Hall, 41 Mo. App. 15.   In this case William H. Coleman sold to the plaintiff a tract of land, and its only outlet to a public road was the road in suit, which passes by the land sold, over the land of William H. Coleman, the grantor, to the Wild Horse road, and consequently regardless of the right of the public or the right of the plaintiff to use this road by prescription, the plaintiff has an implied grant from the owner of the land over which the road runs to the public road.   (3)   The fact that Mr. Locker, at one time owner of the land through which the road runs, for convenience to himself, built a fence on the hill and at Wild Horse Creek road and put gates across the road, does not in any way affect the right of the public in the road by prescription, nothing else having been done to interfere with its use.   Powers v. Dean, 112 Mo. App. 288.

GOODE, J.—The petition describes a road or way lying in St. Louis county and extending from a public road, known as Wild Horse Creek road, across plaintiff's farm to defendant's farm, alleges the latter, without leave or license, has entered on plaintiff's land, has used frequently and threatens to continue to use the way across said land for the purpose of passing to and fro with wagons, horses and cattle, and at different places has wrongfully graded parts of the road or way, deposited on it broken stone or gravel, thereby depriving plaintiff of the use of part of his land, and threatens to continue this course of conduct to the irreparable injury of plaintiff. The prayer is for a writ of injunction restraining defendant, his agents, servants and employees forever from entering on said way, using any way across said land for any purpose, or depositing thereon any stone, gravel or other substance. The farms of the two parties adjoin, and defendant's way of egress from his farm to the public road known as Wild Horse Creek road is along the road in controversy across the southern portion of plaintiff's land into Wild Horse Creek road. After stating a general denial, the answer avers the way in question had been used by defendant and those under whom he claims for more than twenty years prior to the institution of the present action as a road to and from defendant's farm to Wild Horse Creek road, and defendant has acquired by prescription the right to use and occupy said road and keep it in repair. Prior to 1885 W. H. Coleman, who died during said year, owned the fee-simple of the land over which the way in question extends. He devised the land by will to his wife for her life, with remainder over to his children. The interests of the remaindermen were conveyed to plaintiff before the death of the widow or life tenant, which occurred in 1905, when plaintiff became the owner of the entire fee. The evidence is harmonious and shows the way in controversy has been used by residents of the neighborhood and any one else who wished, time out

of mind. Witnesses seventy-two and seventy-five years old testified it was a traveled road in their boyhood and as far back as they could remember, but exactly when it began to be traveled was not proved, and likely it has been since that portion of the country was settled. Certainly it has been continuously for sixty years or more by all persons who had occasion to go over it, by defendant and his ancestors for at least three generations, and the like period by other families in the vicinity. In early days the road was used as an outlet to Wild Horse Creek road and thence along the latter to a ferry known as Glade's Ferry, which was across the Missouri river at or near the village of Port Royal in Franklin county; but the way in dispute and the farms of the litigants lie in St. Louis county near the line between the two counties. A long time ago there was a mill on the river which people dwelling near this road reached by traveling over it. For an indefinite period before the year 1877 gates stood across the road at either end, one close to Wild Horse Creek road and the other at defendant's end. These gates were put in by the man who then owned the land the road crossed in order to enable him to use his adjacent fields as a pasture for stock, but the gates did not interfere with travel and people passed through them at will. A stock law went into effect in St. Louis county in 1877 and thereafter the gates were not used on the road. For a while, too, before the Civil War, the road was fenced off from the fields and was then known as Bly's Lane. It is the only outlet from defendant's farm and those of some other proprietors. The people who use it have worked it occasionally for years past, to keep it in good condition for travel, but it never has been worked by the county authorities. Plaintiff bought the fee of the land knowing of the use of the road by the citizens of the neighborhood and the general public, and that this use had continued as long as the oldest citizens could remember without question or remonstrance on the part of plaintiff's predecessors in title. Years ago, but how

many is not shown, a church was built beside the way three or four hundred feet from Wild Horse Creek road and since then the way has been used by people who attended the church.   Plaintiff contends the use of the road was under a license from the owners of the servient estate; hence was never adverse so an easement was acquired by prescription to use it, either as a public or a private way.   Nothing appears to support this view except the fact that for a while during the long period the road was traveled, there were gates across it.   But the evidence indicates that previously it was without gates and those across it later were erected by the owner of the fee at the time, not as a licensor of the road who might control its use or to show it was traveled by his permission, but to render fields which bordered on it useful for pasturage.   And so during another period the road was fenced off from the adjacent lands as a lane, a circumstance tending to show the then owner of the servient lands regarded the strip as subject to a public, or at least a neighborhood, easement and even might be argued to prove an intention to dedicate the strip to use as a highway.   The changes in the form of the way were such as might be expected during the course of its history, and likely grew out of the thinner settlement of the country in early days, the slighter value of land and a disposition on the part of the owners of the fee and his neighbors who used the road most, to be mutually accommodating and adapt the use as much as possible to the welfare and convenience of every one concerned. No proprietor prior to plaintiff objected to travel over it and we find nothing in the record which, when fairly construed, tends to prove it was traveled or repaired by permission of the owner of the fee, either originally or at any interval.   On the contrary, the impression is left that all parties acquiesced in its use as a matter of immemorial right.   For several generations past some farms had been dwelt on and tilled without having another outlet provided or their right denied; a circum-

stance directly pointing to a belief that the road was of right available to the occupants of those farms, when we remember how often neighborhood roads are shifted and how prone proprietors become, as land grows valuable, to include in their fields strips used as roads by permission. After the year 1847, when the limitation period of actions to recover real property was reduced from 20 to 10 years, the public might have acquired an easement in the road by ten years' open, adverse and uninterrupted use under claim of right. [State v. Walters, 69 Mo. 463; Fugate v. Pierce, 49 Mo. 441, 447; Callaway Co. v. Nolley, 31 Mo. 393.] A statute enacted in 1887 and which now appears in the Revised Statutes of 1899 as section 9472, is invoked by plaintiff's counsel as preventing acquisition of an easement by the public. The statute said that when a road had not been opened by order of the county court, no lapse of time should divest the owner of the fee of his title, unless, in addition to the use of the road by the public for ten consecutive years, there should have been public money and labor expended on it. We are not called on to expound that law further than to say it does not purport to operate retrospectively and the road in question had been traveled for forty years or more before its enactment; hence, whatever right the public could acquire by user had been acquired before the statute took effect. [State ex rel. v. Thompson, 41 Mo. 25.] But for the purposes of this case we need not decide the road had become a public one by use, for the primary point at issue is whether defendant has an easement in it as a way, and of this, at least, there can be no doubt. As said, he and his ancestors occupying the farm now owned by him, have used the way as appurtenant to their land for three generations and probably since the country was sufficiently settled for courses of travel to become beaten. A private way may be acquired by prescription, as was ruled in Autenrieth v. Railroad, 36 Mo. App. 254, 260; a case very like the one at bar and a precedent to be followed.

The prescriptive time, which was twenty years when the easement began to be used, is now ten; but in any event the use has been so long and constant as to put it beyond question that defendant owns the easement, as there is no proof the travel began by permission of the fee owner, and all the evidence suggests the contrary.

Plainly the judgment of the court was for the right party and it is affirmed. All concur.