A. W. STICKLE et al., Plaintiffs-Respondents,
and
Edmund Vincent Cowdry, Jr., et al., Intervenors-Respondents,

v.

Mildred A. LINK, Defendant-Appellant.

No. 57436.

Supreme Court of Missouri, Division No. 1.

June 10, 1974.

Motion for Rehearing or for Transfer to Court En Banc Denied July 22, 1974.

Peper, Martin, Jensen, Maichel & Hetlage, William A. Richter, Arthur L. Smith, St. Louis, for plaintiffs-respondents.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, for intervenors-respondents.

Lewis, Rice, Tucker, Allen & Chubb, James W. Herron, St. Louis, for defendant-appellant.

WELBORN, Commissioner.

Appeal by Mildred A. Link from adverse judgment in action against her to limit her use of a roadway.

The principal contested issue between the various plaintiffs and plaintiffs-intervenors and the defendant Link was the nature and extent of the defendant's right to use the roadway. Plaintiffs and intervenors sought generally to limit defendant's right to a private right for use of the road for residential and agricultural purposes. By her answers and various counterclaims defendant sought to establish that the road was a public road or, alternatively, that she had an unrestricted right to use the road

for any purpose incident to the use of her lands. The litigation was precipitated by defendant's plans and preparations to lease a portion of the land owned by her for a quarry and to make use of the road for the transport of machinery and equipment to the quarry site and for the transport of the product of the quarry operation.

The southern terminus of the road is at Wild Horse Creek Road, a public road in St. Louis County. At that point, the road is on land owned by plaintiffs Dr. A. W. Stickle and his wife, Frances, and on land owned by plaintiffs-intervenors Dr. Albert D. Thomas and his wife, Colleen. The road runs northwesterly some 400 feet on both properties and then enters the Stickle property alone for some 400 feet, at which point it meanders into property owned by defendant Mildred Link, back into the Stickle property, then into property owned by plaintiff County Management Corporation, back into the Stickle property alone and then into the Link property. After running on the Link property, the road again meanders and enters the County Management property for a short distance before returning exclusively to the Link property. At a point some 1400 feet beyond the return to the Link property and slightly in excess of ½ mile from Wild Horse Creek Road, the road forks at a "Y" intersection. The branch to the right crosses the southeast corner of land owned by plaintiffs-intervenors Edmund Cowdry, Jr., Alice Cowdry Luten and Margaret Cowdry Park. That branch of the road then enters and serves property owned by persons not parties to this litigation.

The left branch of the road continues on the Link property a short distance and then crosses the northeast corner of the Thomas property for some 500 feet; there it again enters the Link property. The road proceeds west through the Link property for about ½ mile. At that point the road runs along the boundary between one tract owned by plaintiffs-intervenors Mary Frances Cutts Jones and Jane Watson Cutts Pieters and another tract owned by plaintiff-intervenor Jane W. Cutts. The parties disagree as to the existence and course of the road beyond the west boundary of the Cutts property.

The surface of the roadway is paved from the Wild Horse Creek Road intersection to the "Y". The right fork at the "Y" continues to be paved. The left fork is a generally unimproved roadway with two tracks the width of the tread of an automobile, with grass and other vegetation between the tracks. The surface of the road was gravel. (At the trial, the paved portion of the disputed roadway was referred to as the "paved" road, and the unimproved portion as the "ridge" road. Similar references will be made here.)

## USE OF ROAD AT TIME OF TRIAL

Doctor Stickle acquired some 52 acres fronting on Wild Horse Creek Road. Around 1968, he built a residence on a 3.73-acre tract carved from the larger area and lived there at the time of trial. The paved road provided access to his residence. He conveyed the remainder of the tract to County Management Corporation, a Stickle family-owned corporation which raises horses on the land. Horses are hauled to and from the land over the paved road in two and four-horse trailers, pulled by cars or pickup trucks.

The Cowdrys acquired some property from Miss Link in 1966. There was an old house on the property at that time. The Cowdrys tore it down and erected a small house which is used as a weekend and summer residence. Access to it is by the paved portion of the roadway.

The two tracts owned by plaintiff-intervenor Cutts and plaintiffs-intervenors Jones and Pieters appear to be 10 acres each. There is a house on the Cutts tract. That property was owned by the Cowdrys from about 1933 to 1935 or 1936, when the Cuttses acquired it. They used the house as a summer and weekend residence. The Cuttses made similar use of the house, at least until the death of Mr. Cutts in 1956.

Since that time it has been used by Mrs. Cutts' daughters, Mrs. Jones and Mrs. Pieters, as a weekend and summer residence. There had been a house on the Jones-Pieters tract at the time the Cuttses acquired their property, but it had since been torn down. Access to the house on the Cutts property was over the paved road and the ridge road.

There were no other houses served by either the paved road or the ridge road at the time of trial. There were three houses beyond the point where the road forked to the right, in addition to the Cowdry house. Those houses, as well as a Jesuit retreat known as Green Hills, were served by that road and made use of the paved road from the "Y" to Wild Horse Creek Road.

Miss Link conducts farming operations on her land. She pastures cattle, makes hay and grows some other farm crops. About 2½ years prior to trial, she sold timber on some of her land to a man who took out around 15,000 feet of timber. The timber that was removed was trucked over the ridge and paved roads.

Doctor Thomas purchased his property in 1962. He used it for farming. He ordinarily did not use either the paved road or the ridge road for access to his property.

The roadway provides the sole access to some 400 acres of land in the vicinity owned by defendant Link. A greater part of the land has been in her family since 1800. The major portion of it lies to the north of the road. All of Miss Link's holdings are contiguous except for a 42.25 acre tract on which the paved portion of the road runs in part. The contiguity of that tract with her remaining land was destroyed in 1965–1966 when she sold about five acres to the Cowdrys, parents of the plaintiffs-intervenors Cowdry-Luten-Park. In the sale of that property, Miss Link reserved a 15-foot easement across the southern boundary of the tract for roadway purposes "for the use and benefit of land

owned by her adjoining the property herein conveyed on the West and North * * *." Miss Link also reserved for herself an easement for roadway purposes on the portion of the paved road which ran across the land conveyed to the Cowdrys.

## PRIOR USE OF ROADWAY

In 1907, Anton Leiweke was the owner of the Stickle-County Management-Thomas property. In that year he filed suit in the St. Louis County Circuit Court against Andrew J. Link, father of defendant Mildred Link. The petition alleged that Link was wrongfully using a way approximately ¼ mile in length and 15 feet in width, across plaintiff's property, and running from Wild Horse Creek Road to property occupied by defendant Link. The petition sought to enjoin the continued use of the way by Link. Defendant's answer alleged a prescriptive right to use the way by virtue of a user of more than 20 years. After a trial, the court found the issues in favor of the defendant and entered judgment dismissing plaintiff's bill. Plaintiff appealed to the St. Louis Court of Appeals which affirmed the judgment. Leiweke v. Link, 147 Mo.App. 19, 126 S.W. 197 (1910).

At the trial of this case, the parties stipulated that the roadway involved in Leiweke v. Link, supra, was "at least" that portion of the paved road from Wild Horse Creek Road to where it entered Miss Link's 42.25-acre tract. The parties also agreed that the transcript on appeal could not be found. Counsel for defendant requested the court to take judicial notice of the report of the decision of the Court of Appeals. Counsel for plaintiffs and intervenors objected to the use of the opinion as evidence of any fact therein recited by the court.

The effect of the prior decision is one of the primarily contested questions on this appeal. Appellant contends that the judgment in that case gave her as successor in interest to her father an unrestricted right to use the roadway and that the burden

was on respondents to limit that easement. Appellant contends that any limitation must have been based upon the limited use by Link during the prescriptive period and that there was no evidence to support a finding that, during the prescriptive period, Link's use of the road was limited to private, personal, residential and agricultural purposes.

Respondents, on the other hand, contend that appellant had the burden of showing that "heavy industrial or commercial user" obtained on her easement for a period as long as the prescriptive period.

As might be expected there was little evidence of the extent of the use of the road by appellant's father. There was testimony by a man who had been familiar with the road since 1907 that it at that time served the town of Port Royal, located on the Rock Island Railroad and the Missouri River. The town was in Franklin County and would have been at least ½ mile beyond the Cutts lot, to the north and west. Around 1907, Port Royal was a town with about 10 occupied residences. It also had a store and post office. No one has lived in the town since the 1920's.

Pictures introduced in evidence at the trial show a clearly defined roadway past the Cutts property and this roadway as extended undoubtedly did serve Port Royal. The opinion of the St. Louis Court of Appeals in Leiweke v. Link, supra, took note of the existence of Port Royal and the use of the roadway there in dispute by residents of the town.

A witness for appellant testified that he recalled quarries operated in the vicinity of Port Royal. Two lime kilns about 1½ miles west of the town site still stand. Appellant introduced in evidence a lease dated September 2, 1889, by which Andrew Link leased to John Oliver a tract north of the area appellant proposed to develop as a quarry. The lease was for quarrying purposes "and burning and manufacturing lime thereon" for a term of five years with a 15-year option. No evidence of the extent of the operation under the lease appears. Miss Link testified that in 1915 she observed what appeared to be a rather new excavation of rock in the vicinity of the land covered by the 1889 lease, and also near the quarry she proposed to develop. There was no direct evidence of the extent of use, if any, of the disputed roadway in any such quarrying operations.

There was considerable evidence as to the existence of numerous branches from the roadway between the Cutts property and Port Royal. The general object of such evidence apparently was to demonstrate an earlier rather extensive use of that portion of the roadway and thus of the roadway here in dispute, the tenor of the evidence being that users of the now nearly nonexistent ways had necessarily used the disputed way which provided the only access from the area to a public road.

Thus there was evidence that a short distance west of the Cutts property, a branch of the road went to the north, eventually leading to a site on Miss Link's property on which a transmission tower had been erected during World War II. The tower was used in transmitting electricity from Bagnell Dam to the Weldon Springs munitions plant. Materials for construction of the tower came over the roadway from Wild Horse Creek Road. There was also a guard house in connection with the tower which was manned during the war. Employees who manned the tower came over the road here involved.

Other branches led to residences, since abandoned. One went to a Johnson house which had been vacant since around 1935. The Port Royal branch went past a house formerly occupied by George Pillman. Just when the Pillman house became vacant was not clear. Intervenor Jones testified that he left before World War II. She testified that Pillman had no automobile and whenever she saw him on the road in the vicinity of the lot she now owns, he was walking. A witness for defendant testified that she made weekly deliveries of

groceries to the Pillman house until 1957, reaching the house by auto over the road here in question.

There was also evidence that branches of the road led to St. Albans farm, a large scale farming operation to the west of defendant's land, involving several thousand acres in Franklin County. Defendant testified that St. Albans farm employees use the road to get tractors and equipment to their lands bordering defendant's land.

The parties disputed the travelability of the roadway beyond the Cutts property at the time of trial. It is sufficient to conclude that over the years there has been a diminution in the use of that portion of the road, although the outline of a road, traversable by auto, clearly appears to at least the branch to the tower.

There was evidence of timbering operations over a long period of time on the lands served by the road, with the road being used to haul the product of such operations.

On this appeal, appellant asserts that the judgment in the case of Leiweke v. Link, supra, gave her as successor in title to her father an unlimited easement in the road for roadway purposes and that if such right is to be limited, respondents had the burden of proving that the use of the roadway during the prescriptive period was limited. Respondents, on the other hand, assert that appellant has relied on Leiweke v. Link, supra, as res judicata of her right and that the burden is upon her to show that the use during the prescriptive period included the heavy commercial and industrial user which appellant now proposes to make of the road.

■ Both parties agree with the proposition that the character and extent of a prescriptive easement right is determined by the character and extent of the user during the prescriptive period. Riggs v. City of Springfield, 344 Mo. 420, 126 S.W.2d 1144, 1149 [4, 5] (Banc 1939); Holian v. Guenther, 471 S.W.2d 457, 459 [1, 2] (Mo.1971).

■■ In this case plaintiffs and intervenors acknowledged that the defendant had a right to make use of the roadway which ran across their land, but sought to restrict such right. As the owners of the land, the plaintiffs would have the right to impose such a restriction unless defendant had by some means acquired the right to a use in excess of the limitation which plaintiffs sought to impose. Defendant relied upon the judgment in Leiweke v. Link, supra, for such purpose. In so doing, she assumed the burden of showing that the judgment in Leiweke v. Link granted an unrestricted right to the use of the roadway, just as she assumed the burden of her assertion that the road was a public road. These were affirmative propositions on which she had the burden of proof. Henderson v. La Capra, 307 S.W.2d 59 (Mo. App.1957); Ackley v. Ackley, 257 S.W.2d 404, 407 [3, 4] (Mo.App.1953).

In support of her burden, defendant put in evidence the pleadings in Leiweke v. Link, supra. The petition asserted that defendant was using the road over plaintiff's land "without leave or license." The answer was a general denial, coupled with a plea that the road had been used by the defendant and those under whom he claimed for more than 20 years "as and for a road to and from said defendant's property to the Wild Horse Road, a public road * * * ;" and that defendant had thereby acquired a right by prescription to use the road and keep it in repair. There was no request for a delineation of defendant's rights and the only evidence of the judgment entered is a memorandum of either the judge or clerk: "Finding of issues in favor of deft. Judg. dismissing bill at ptffs. cost."

The only evidence of the basis for the trial court's conclusion is to be found in the report of the decision of the St. Louis Court of Appeals on the appeal to that court, the parties agreeing that no transcript of the trial proceedings or other record of the evidence is available.

Respondents argue that the opinion of the St. Louis Court of Appeals is not competent evidence for the purpose of proving any matter of fact, relying on Carney v. Carney, 95 Mo. 353, 8 S.W. 729, 731 (1888). While the opinion may not be used to prove the facts therein stated, it may be used to determine, in this case, the matters presented to the trial court and the evidentiary basis, for purposes of passing upon appellant's plea of res judicata, of the judgment in that case. See Mayfield Co. v. Rushing, 133 Tex. 120, 127 S.W.2d 185 (1939).

Looking to the opinion in Leiweke v. Link, supra, the recitals show that the trial court had before it in that case a user by Link of the roadway for residential and agricultural purposes. The opinion refers to the defendant's use of the road to provide an outlet from his farms which he occupied. There is no showing that there was before the court evidence of use by the defendant for other purposes. There was evidence that the road had been used by others, but again there is nothing to indicate that such use was for other than residential and agricultural purposes. The appellate court in its opinion refers to the possibility that the evidence would have supported a finding that the way had achieved the status of a public road. However, that was not the reliance defendant pleaded in his answer as justifying his use and was not the issue presented to the trial court.

Appellant asserts that the judgment in Leiweke v. Link, supra, is res judicata because the extent of defendant's right of user was germane to the original cause of action and could have been there determined. Appellant relies on the rule stated and applied in Autenrieth v. Bartley, 238 Mo.App. 55, 176 S.W.2d 546, 549 [3, 4] (1943), that the plea of res judicata applies not only to points actively passed upon "but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

In Autenrieth, plaintiff who had unsuccessfully sought to quiet title in himself to a 16-foot strip of land was held to have been precluded by such judgment from subsequently bringing an action to establish his right to an easement in the subject property. The court noted in its opinion that the evidence was substantially the same in both cases and concluded that the judgment in the first case denying any title of plaintiff in the land precluded the subsequent asserting of the easement right, which could have been advanced in the first instance. 176 S.W.2d 550 [7].

The rule in Autenrieth applies only to the same cause of action. In that case the cause of action was the same. The court there stated:

"It is of interest to note that the plaintiff testified in this case that, prior to bringing the first suit, the only dispute or controversy between him and the defendants concerning this 16 foot strip of land, was his right to use it as a roadway; and that his testimony in this case was substantially the same as in the first case. We mention this to indicate that the plaintiff had knowledge of the facts and of what the dispute and controversy was before he brought his first suit and that he had every opportunity of presenting to the court whatever claim, right, title or interest he had in and to such land. Being possessed of such knowledge, it was his duty to bring forth whatever claim of title or interest he had and whether he did so or not, he had an opportunity to do so, and if he failed, he is nevertheless estopped to relitigate an issue which was or could have been litigated in the first suit." 176 S.W.2d 551.

The issue of use of the roadway by the defendant for residential and agricultural purposes was before the trial court in Leiweke v. Link, supra. Respondents here acknowledge the right of appellant as established by that case. The issue here relates to an expansion of such right. There is no reason to bar this action on the grounds that Leiweke should have foreseen

a possible use such as appellant now proposes to make of the road and that he therefore should have presented such issue in the earlier case. This case involves different facts and Leiweke v. Link, supra, is not res judicata of the issue of appellant's right to a different or materially greater use of the easement.

■ Appellant argues that the preponderance of the evidence shows that the use during the prescriptive period was broader than for residential and agricultural purposes and included extraction of natural resources. Appellant points to numerous recitals by the Court of Appeals in Leiweke which point to a more general use of the roadway prior to that case, but there is no reference to a use involving extraction of natural resources. The opinion does refer to the past existence of a mill near the river which was used by persons passing over the roadway. Such use would be directly related to agricultural purposes. Appellant points to the evidence of earlier quarrying operations, including the 1889 lease for quarrying purposes, and to the evidence, based upon the appearance of certain portions of Miss Link's land, that quarrying operations had previously been conducted there. Appellant argues that such evidence, coupled with evidence of the abandoned lime kilns west of Port Royal, shows that the roadway was used in hauling quarry rock. There is no direct evidence to such effect. The quarry sites are near the river and it is just as reasonable to assume that the product of any quarrying operation was taken to the river, an important artery of commerce at that time, as to assume that such products were transported over the roadway to Wild Horse Creek Road. This argument of appellant must be rejected.

The trial court correctly ruled the issue of the appellant's use of the roadway on the properties of Stickle, Thomas and County Management Corporation for quarry purposes.

■ Appellant attacks the use by the trial court in its decree of the word "private" in describing the easement of appellant and her right to use the roadway. Appellant argues that such language restricts the easement to a personal one and it would therefore not be appurtenant to her lands. The language objected to does not change the character of the easement, recognized in Leiweke v. Link, supra, as an appurtenant easement. The word "private" is descriptive of the way, not a limitation upon the nature of the easement.

Appellant attacks paragraph 5 of the court's decree which declares:

"Said roadway is a private roadway for use of residents and property owners in the area served by the roadway for the purpose of providing access to their property for personal, residential and agricultural purposes."

■ The record does not afford a proper basis for this finding. The contested issues in the case insofar as they referred to the use of the roadway described in paragraph 5 were the nature and extent of defendant Link's easement in the roadway across the lands of plaintiffs Stickle and County Management Corporation and plaintiffs-intervenors Thomas. Plaintiffs-intervenors Cutts, Jones and Pieters claimed a prescriptive easement in a portion only of the ridge road which lay on defendant Link's land. They did not assert such right over the entire ridge road and they asserted no right to the portion of the paved road which lay on defendant Link's property; nor did any of the other plaintiffs-intervenors. Any attempt by the trial court by its decree to define the character of the roadway for all adjacent owners was beyond the scope of the pleadings and void as coram non judice.

■ Likewise in paragraph 6 of its decree, the court described the easement of appellant Link as "in common with all other persons who may own a private ease-

ment in said road." There is no basis for a determination that the interest of Miss Link, which arises by virtue of the decision in Leiweke v. Link, supra, is in common with others. That portion of the decree should be amended to declare simply that Miss Link's right is nonexclusive.

Appellant attacks that portion of the decree which holds that intervenors Jones and Pieters have an easement by prescription over the roadway on lands of defendant Link, plaintiffs and intervenors Thomas for "personal, residential and agricultural" purposes. Neither plaintiffs nor Thomas have objected to this portion of the decree and appellant will not be heard to object on their behalf. However, insofar as the decree relates to land of appellant, appellant correctly points out that Jones and Pieters claimed an easement over only a portion of the ridge road. The only justification offered by them for the greater relief afforded by the decree is that appellant "conceded that intervenors Jones and Pieters have the right, along with her, to use that portion of the ridge road which lies within the property of Miss Link, East of Tracts 3 and 4, * * *." No reference is made to where such concession appears in the transcript. The appellant's answer to the intervenors' petition admitted that intervenors and their predecessors in interest had used a roadway through land owned by her, but she denied the allegation that they had acquired a prescriptive easement.

■■■■ Insofar as the trial court's decree is beyond the scope of the pleadings, it cannot be sustained. Insofar as the allegations of the pleadings are concerned, the evidence does support a finding of a prescriptive easement in favor of Jones and Pieters as pleaded, for personal and residential purposes.

Appellant attacks the decree insofar as it held that she had no right to increase the burden of the use of the easement on her property so as to interfere with the use

thereof by Cutts, Jones and Pieters and enjoined defendant from using the roadway on her property in connection with the operation of a quarry.

■■■■ As the owner of the servient estate, Miss Link has the "right of full dominion and use of the [roadway] except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement." Stotzenberger v. Perkins, 332 Mo. 391, 58 S.W.2d 983, 987 [6–9] (1933). While the first portion of the decree objected to by appellant is a correct statement of an abstract legal proposition, there is no support in the record for a finding that the use proposed by Miss Link would unreasonably interfere with the intervenors' right to use of the way. Therefore, there is no necessity for the abstract legal declaration in the decree and the injunctive portion of this paragraph 11 of the decree is not supported on the record and should be deleted.

■■■■ The trial court fixed the width of appellant's easement across the lands of the Stickles, Thomases and County Management Corporation at 16 feet from Wild Horse Creek Road to a point where a driveway enters County Management property and the remainder at 12 feet. These findings were made on conflicting evidence. No good purpose would be served by setting forth such evidence in detail. It is sufficient to say that on such conflicting evidence this court will defer to the finding of the trial court. Rule 73.01(d), V.A.M.R.

■■■■ Appellant contends that the trial court erred in not declaring the roadway a public road. The evidence of her participation in activities to preclude the public use of the roadway was sufficient basis for the denial of such relief. Leiweke v. Link, supra, does not provide the basis for holding the way public. What was said on that subject by the Court of Appeals was dictum, beyond the issue in the case.

## COWDRY PROPERTY

Mrs. Cowdry purchased 3.783 acres of a five, plus, acre tract, from Miss Link on March 1, 1965. On that date, Mrs. Cowdry and her husband executed an option, giving Miss Link an irrevocable option to repurchase the land and improvements thereon. The option required Mrs. Cowdry, in the event she decided to sell the property, to give Miss Link 60 days' notice, stating the terms of such sale, and Miss Link had the right, within 60 days, to purchase on such terms.

On November 28, 1969, Mrs. Cowdry and her husband conveyed the entire tract, including that subject to the option, to their son and two daughters. No notice of intention to convey was given Miss Link. The conveyance was by general warranty deed which recited: "(F)or and in consideration of the sum of One Dollar and other valuable consideration paid * * * the receipt of which is hereby acknowledged, does or do by these present GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM * * *."

Defendant's counterclaim against the Cowdrys, Luten and Park sought reconveyance of the property included in the option given her. At the trial, over defendant's objection that evidence to show that the transfer was a gift was inadmissible in view of the recitals of the deed, Mrs. Cowdry was permitted to testify that her children paid nothing for the property, that she did not receive the recited $1.00 consideration and that the consideration for the conveyance was the love and affection she had for her children.

The trial court found that the transfer to the children did not create a right in appellant to reacquire the property.

In this court, the appellant contends that the court erred in receiving the testimony of Mrs. Cowdry regarding the consideration for the deed because it contradicted the recitation of valuable consideration in the deed.

The recital of consideration in the deed was not of a contractual matter. It was a mere statement of fact, subject to contradiction or explanation, at least insofar as such contradiction or explanation would not destroy the grant. The consideration of $1.00 recited was nominal only and the trial court did not err in admitting the testimony of the parties as to the true consideration. Allaben v. Shelbourne, 357 Mo. 1205, 212 S.W.2d 719, 723–724 [5, 6] (1948); Finley v. Williams, 325 Mo. 688, 29 S.W.2d 103, 106 [12, 13] (1930); Edwards v. Latimer, 183 Mo. 610, 82 S.W. 109 (1904). Appellant relies upon the rule, stated in cases such as Yates v. Burt, 161 Mo.App. 267, 143 S.W. 73 (1912), that where a deed recites a valuable consideration, parol evidence is inadmissible to prove good consideration only. That rule is of questionable validity (4 Tiffany on Real Property (3rd ed.) § 984, pp. 72–74 (1939)), and subsequent cases in the state limit the rule to cases where the object of the evidence is to destroy the grant, not the situation in this case. See Johnston v. Bank of Poplar Bluff, 221 Mo.App. 127, 294 S.W. 111, 114 (1927). The trial court correctly determined this issue.

In Miss Link's deeds to the Cowdrys she reserved an easement over the south 15 feet of the land conveyed in the following language:

"The Party of the First Part does hereby reserve unto herself, her heirs and assigns, an easement for Roadway purposes for the use and benefit of land owned by her adjoining the property herein conveyed on the West and North * * *."

In their intervening petition, intervenors Cowdry, Luten and Park alleged that Miss Link threatened to use this easement strip if she was prevented from using other portions of the roadway for the proposed quarry operation. The intervenors sought an injunction against use of the easement by defendant for access to her land other than for domestic use and purposes. The trial court held that the easement was for

the private use of Link "for purposes of access for personal, domestic and agricultural use to land owned by defendant Link lying to the north and west of said property * * *." The court enjoined use of the easement for any other purpose.

■ Appellant's attack on this limitation is meritorious. The reservation of easement in the deeds was not limited. Therefore, Miss Link had a right to use the easement for all reasonable roadway purposes, not restricted to user reasonably required at the time of the reservation. Karches v. Adolph Investment Corporation, 429 S.W.2d 788, 792–793 [1–7] (Mo.App. 1968). The trial court's decree on this issue should be so amended. The decree should also be amended to exclude any limitation on Miss Link's right to a personal right, the reservation being of an appurtenant easement. Engelhardt v. Gravens, 281 S.W. 715, 718 [2] (Mo.1926).

Inasmuch as the decree must be amended, there are other matters pointed out by appellant which should be corrected. The recital as to the ownership of Cutts, Jones and Pieters should show the ownership of the tracts separately. The condition of the roadway beyond Tracts 3 and 4 was not an issue and should not be a part of the findings. The same is true as to the use of the north branch of the paved road. Miss Link's right to repair the paved road, established by Leiweke v. Link, supra, should not be limited to retention of the present asphalt surface of that roadway.

The decree of the trial court is affirmed in part. Insofar as necessary to effectuate the views herein expressed, the decree is set aside and the cause remanded with directions to enter a new decree in accordance with the rulings herein. Costs on this appeal shall be assessed one half against appellant Link, one fourth against respondents Jones and Pieters and one fourth against respondents Cowdry, Luten and Park.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.